[File No. 7043]

STATE OF NORTH DAKOTA, EX REL. JERRY DREYER, Howard Trovatten, Ted Schram, W. L. Johnson, Oliver Broe, George Randall, individually and as citizens, residents and taxpayers of the City of Minot, on their own behalf and on behalf of all other persons similarly situated, Appellants, v. GEORGE BREKKE, A. H. Briggs, H. J. Coughlin, J. P. Desmond, H. M. Montgomery, S. A. Pritz, C. E. Reed, Albert Slorby, H. H. Westlie, M. W. Whalen, and S. R. Witham, individually and as common council of the City of Minot, J. W. Bliss, as Manager of the City of Minot, and W. E. Slaybaugh, as Chief of Police of the City of Minot, Appellees.

(28 NW2d 598)

Opinion filed August 6, 1947

*Halvor L. Halvorson,* for appellants.

*R. H. Bosard,* City Attorney, for appellees.

*C. L. Foster* (amicus curiae).

NUESSLE, J. The relators, seeking to challenge Ordinance No. 527, enacted by the city council of the city of Minot on May 20, 1946, applied to the district court of Ward County for a writ of certiorari. The application was resisted by the City. After hearing had the writ was denied. Relators thereupon perfected the instant appeal.

Ordinance No. 527, is entitled:

"ORDINANCE REGULATING TRAFFIC AND REGU-LATING THE USE OF PUBLIC STREETS AND AVENUES IN THE CITY OF MINOT; DEFINING AND ESTABLISH-ING PARKING METER ZONES AND REGULATING AND CONTROLLING AND PROVIDING FOR THE INSPEC-TIONS OF THE TIME PARKING OF VEHICLES THERE-IN BY THE USE OF PARKING METERS: PRESCRIBING LIMITS OF TIME FOR PARKING IN THE PARKING METER ZONES: PROVIDING FOR THE PAYMENT AND

COLLECTION OF FEES THROUGH THE PARKING METERS: AND PROVIDING PENALTAIES FOR THE VIOLATION OF THIS ORDINANCE AND PUNISHMENT FOR ITS VIOLATION."

Consistent with this title the ordinance provides for parking meter zones on certain streets of the city of Minot, for the designation of parking space, and the installation of parking meters therein to be placed upon the curb adjacent thereto, for the times when such meters shall be in operation, and for the purchase and installation of the meters. The ordinance further fixes the length of time that parking spaces may be occupied and the denomination of the coins to be inserted in the meters in order to register the length of time of occupancy, and provides penalties for overtime parking and for other violations of the ordinance. It also provides in § 15 thereof that:

"The amount of the coins required to be deposited in parking meters as provided herein is hereby charged and collected as a fee to provide for the proper regulation, control, and inspection of traffic upon the public streets, and to cover the cost of supervising, regulating, and inspecting the parking of vehicles in the parking meter zones provided for herein, the cost of placing and maintaining lines or markings designating parking spaces in parking meter zones, and the cost of the purchase, supervision, protection, inspection, installation, operation, maintenance, control, and use of the parking meters installed hereunder and the special fund in which such fees shall be placed shall be devoted exclusively to those purposes."

The relators challenge the ordinance on the ground that it is unconstitutional and void; that the city council acted without and beyond its jurisdiction in enacting and adopting the same; and allege that the relators will be injured by reason of its enforcement and pray for relief by way of certiorari.

The statute, § 32–3301, ND Rev Code, 1943, provides that,

"A writ of certiorari shall be granted by . . . the district court when an officer, board, tribunal, or inferior court has exceeded the jurisdiction of such officer, board, tribunal,

or inferior court, as the case may be and there is no appeal, nor in the judgment of the court, any other plain, speedy, and adequate remedy, and also when, in the judgment of the court, it is deemed necessary to prevent miscarriage of justice."

This court has often had occasion to consider and apply this statute and has uniformly held that certiorari will lie only to review acts in excess of jurisdiction. See State ex rel. Johnson v. Clark, 21 ND 517, 131 NW 715, and cases cited therein; State ex rel. Noggle v. Crawford, 24 ND 8, 138 NW 2; State ex rel. Wehe v. Frazier, 47 ND 314, 182 NW 545; Baker v. Lenhart,. 50 ND 30, 195 NW 16; State ex rel. Ness v. Fargo, 63 ND 85, 246 NW 243; State ex rel. Olson v. Welford, 65 ND 522, 260 NW 593; Bryan v. Olson, 68 ND 605, 282 NW 405. Accordingly, the primary question here is as to whether the city council of Minot acted in excess of its jurisdiction in enacting the challenged ordinance.

Webster's New International Dictionary, 2d ed defines jurisdiction as "Authority of the sovereign power to govern or legislate; power or right to exercise authority; control." And the New Century Dictionary as "The extent or range of judicial or other authority." In Baker v. Lenhart, 50 ND 30, 195 NW 16, supra, this court said, "Jurisdiction relates to the power of the tribunal, and not to the rights of the parties. Dahlgren v. Superior Court, 8 Cal App 622, 97 P 681. 'The test of the jurisdiction of a court is whether or not it had power to enter upon the inquiry; not whether its conclusion in the course of it is right or wrong.' Lake County v. Platt (CCA 8th) 79 F 567. 'Excess of jurisdiction is to be distinguished from errors of law or of fact committed by the inferior tribunal within the limits of its jurisdiction. Such an error does not constitute an excess of jurisdiction. If a court acts in the exercise of its lawful jurisdiction, and not in excess of such jurisdiction, the mere fact that its conclusion is wrong does not make its action an excess of jurisdiction.' 4 Cal Jur pp 1036, 1037." See also Hanson v. North Dakota Workmen's Comp. Bureau, 63 ND 479, 248 NW 680; State Dental Examiners v. Savelle, 90 Colo 177, 8 P2d 693, 82 ALR 1176. Summed up, we think that jurisdiction

within the meaning of that term as used in the statute, § 32–3301, supra, may be defined as the power and authority to act with respect to any particular subject matter.

In the instant case the ordinance challenged purports to be a regulatory measure. There is no contention made by the relators that the procedure required to be followed in the enactment of the ordinance was not strictly complied with. Their challenge is to the power of the city commission to regulate the use of the streets of the city of Minot in the manner prescribed by the ordinance. Accordingly, pursuant to the authorities above cited, if the commission was empowered to regulate the use of the streets of the city to which the ordinance had application, then it had jurisdiction to enact such a regulatory ordinance as in its judgment seemed proper and efficacious to attain that end, and mere error of judgment in thus exercising its power would not constitute excess of jurisdiction.

A municipal corporation takes its powers from the statutes which give its life and has none which are not expressly or impliedly conferred thereby or essential to effectuate the purpose of its creation. Lang v. Cavalier, 59 ND 75, 228 NW 819.

The statute, § 40–0501, ND Rev Code 1943, enumerating the powers conferred on municipalities, provides:

"The governing body of a municipality shall have the power:

1. To enact or adopt all such ordinances, resolutions, and regulations, not repugnant to the constitution and laws of this state, as may be proper and necessary to carry into effect the powers granted to such municipality, or as the general welfare of the municipality may require, and to repeal, alter, or amend the same. Fines, penalties and forfeitures for the violation thereof may be provided within the limits specified in this chapter notwithstanding that such offense may be punishable also as a public offense under the laws of this state;

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

8. To lay out, establish, open, alter, repair, clean, widen, vacate, grade, pave, park, or otherwise improve and regulate the use of streets, alleys, avenues, sidewalks, crossings, and pub-

lic grounds; to regulate or prevent any practice having a tendency to annoy persons frequenting the same; and to prevent and regulate obstructions and encroachments upon the same;

. . . . . . . . . . . . . . . . . . . .

17. To regulate traffic and sales upon the streets, sidewalks, and public places;

. . . . . . . . . . . . . . . . . . ."

And § 40–0502, ND Rev Code 1943 provides:

"The city council in a city operating under the council form of government and the board of city commissioners in a city operating under the commission system of government, in addition to the powers possessed by all municipalities shall have power:

. . . . . . . . . . . . . . . . . .

14. To regulate, control, or restrict within designated zones or congested traffic districts, the use of streets, alleys, or other public ways by various classes of traffic, except that any municipal regulations shall be ineffective as to common carriers licensed by this state under a certificate of public convenience and necessity until such regulations are approved by the public service commission;

. . . . . . . . . . . . . . . . . ."

Clearly, pursuant to the provisions of these statutes the city of Minot was empowered to regulate the use of its streets. But the relators say that the powers thereby conferred were limited and circumscribed by later enactments contained in title 39 (fifteen chapters comprising §§ 39–0101 to 39–1503, inclusive) ND Rev Code 1943, having to do with motor vehicles and motor vehicular traffic. We think, however, there is nothing in title 39, which in any way restricts the powers granted pursuant to the sections above quoted, insofar as those sections empower the city to regulate the use of the streets by prescribing parking regulations. It is true that § 39–0704, provides:

"Except as expressly authorized by § 39–0903, and section 39–0703, local authorities may not alter any speed limitations declared in chapter 9 of this title, or enforce any rule or regula-

tion contrary to the provisions of chapters 8 to 13, inclusive, of this title. Local authorities, under ordinance, shall have the power to:

1. Regulate traffic by means of traffic officers, semaphores, or other signaling devices on any portion of the highway where traffic is heavy or continuous;

2. Prohibit other than one-way traffic upon certain highways;

3. Regulate the use of the highways by processions or assemblages; and

4. Regulate the speed of vehicles in public parks. Adequate signs giving notice of any such special speed limit that may be provided for by subsection 4 of this section shall be erected and placed in the entrances to all such parks."

Chapters 8 to 13, inclusive, above referred to, respectively deal with:

8. Regulations Governing Operators,

9. Speed Restrictions,

10. General Rules of the Road,

11. Equipment of Vehicles,

12. Size, Width, and Height Restrictions, and

13. Traffic Signs.

Without reciting the particular provisions of these several chapters, it is enough to say that there is no provision contained therein which is in any way affected by the ordinance challenged in the instant case. The only reference to parking or parking regulations is contained in Chapter 13. Section 39–1302 thereof provides: "Local authorities in their respective jurisdictions may cause appropriate signs to be erected and maintained, designating residence and business districts, highway and railway grade crossings, and such other signs as may be deemed necessary to carry out the provisions of this chapter, and such additional signs as may be appropriate to give notice of *local parking and other special regulations,*" while § 39–1303 provides: *"Local parking and other special regulations* shall not be enforcible against an alleged violator if, at the time and place of the alleged violation, an appropriate sign giving notice thereof is not in proper position and suffi-

ciently legible to be seen by an ordinarily observant person."
Thus these provisions recognize rather than deny the right of
local authorities to make and enforce parking regulations. It
is obvious, therefore, that municipalities such as the city of
Minot have the right in the exercise of their power to regulate
the use of streets to make and enforce regulations with respect
to parking.

It follows that the council of the city of Minot did not exceed
its jurisdiction in enacting Ordinance No. 527.

The order appealed from is affirmed.

BURR, J., concurs.

MORRIS, J., not participating.

CHRISTIANSON, Ch. J. (concurring specially). I concur in an
affirmance of the order appealed from and in the principles
stated in paragraphs 1, 2, and 3 of the syllabus. I am of the
opinion that the application for the writ of certiorari in this
case fails to present any question properly reviewable on cer-
tiorari and fails to allege any facts justifying the issuance of
such writ.

The City Commission of the City of Minot enacted the or-
dinance mentioned in the principal opinion written of Judge
Nuessle. After the ordinance had been enacted and published,
the relators applied to the district court for a writ of certio-
rari. In the petition for the writ it is asserted that the ordi-
nance is unreasonable and violative of the Laws and the Con-
stitution of the State and of certain provisions of the Federal
Constitution; that the City Commission exceeded its jurisdic-
tion in the enactment of the ordinance; that the petitioners
and the greater number of persons who use the streets will be
prejudiced by the operation of the ordinance; that the petition-
ers are beneficially interested and have no plain, speedy or ade-
quate remedy at law. A copy of the ordinance is attached to
the petition. In the notice of the application for the writ it is
stated the relators will move the court at the time and place

stated, "for the allowance of a Writ of Certiorari, enjoining and restraining the City of Minot, its common council, and officers, from enforcing or attempting to enforce that purported Ordinance No. 527, . . . upon the ground and for the reason that said Ordinance is in excess of the jurisdiction of the said common council of the City of Minot, is unconstitutional and void, and is an attempt to change the fundamental highway laws of the State of North Dakota; and for such other and further relief against said Ordinance as shall seem just and proper."

A city acts in a dual capacity: (1) in a governmental or public character; and, (2) in a business or proprietary capacity. 5 McQuillin, Municipal Corporations 2d ed § 1946, p 84; 1 McQuillin, Municipal Corporations 2d ed § 364, p 997; 1 Dillon, Municipal Corporations 5th ed § 109. "'In *its governmental or public character,* the corporation is made, by the state, one of its instruments, or the local depositary of certain limited and prescribed political powers, to be exercised for the public good on behalf of the state rather than for itself.'" Chrysler Light & P. Co. v. Belfield, 58 ND 33, 46–47, 224 NW 871, 63 ALR 1337.

In the exercise of powers of a governmental nature, either as an agent of the state or as the local governmental organ, a city acts in the capacity of a sovereign. 1 McQuillin, Municipal Corporations 2d ed § 364, pp 997, 998.

A city is vested with both legislative and executive powers. 1 McQuillin, Municipal Corporations 2d ed § 366, p 1000. "Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them, or appoint the agents charged with the duty of such enforcement. The crucial test for determining what is legislative and what is administrative is whether the ordinance is one making a new law, or one executing a law already in existence." McQuillin, Municipal Corporations 2d ed § 366, pp 1000, 1001. City charters whether evidenced by special laws or by general legislative acts "usually provide that the legislative powers of the corporation shall be vested in the governing legislative body." 1 McQuillin, Municipal Corporations, 2d ed § 388, pp 1066, 1067.

When assembled for the performance of their legal functions as a law-making body, the governing legislative body of the city constitute "a miniature general assembly" and valid ordinances enacted by such body have the force of law. 2 McQuillin, Municipal Corporations 2d ed pp 677 et seq.

The legislative power conferred upon the governing body of a city is not restricted to the enactment of ordinances. In certain matters the power may be exercised by resolution or order. State ex rel. Kettle River Quarries Co. v. Duis, 17 ND 319, 116 NW 751; 2 McQuillin, Municipal Corporations 2d ed pp 657 et seq.

Whether a particular thing should be done by ordinance or by resolution depends upon the requirements of the charter and the forms observed in doing the act. 2 McQuillin, Municipal Corporations 2d ed pp 657, 658. Ordinarily, "A resolution deals with matters of a special or temporary character; an ordinance prescribes some permanent rule of conduct or government, to continue in force until the ordinance is repealed, and is distinctively a legislative act." 2 McQuillin, Municipal Corporations 2d ed pp 657, 658; 18 Cal Jur pp 909, 910.

In Shuttuck v. Smith, 6 ND 56, 72, 73, 69 NW 5, this court said: "Black defines an 'ordinance' to be: 'A rule established by authority; a permanent rule of action; a law or statute.' See Black, Law Dictionary. In Dillon, Municipal Corporations, § 307, 4th ed it is said that in this county (country) the word is 'limited in its application to the acts or regulations, in the nature of local laws, passed by the proper assembly or governing body of the corporation.' In *Citizens' Gas & Min. Co. v. Elwood,* 114 Ind 332, 16 NE 626, Judge Elliot says, 'It means a local law prescribing a general and permanent rule.'"

The Constitution of the State provides that "The legislative assembly shall provide by general law for the organization of municipal corporations." ND Constitution, § 130. In conformity with the constitutional requirement, the legislative assembly has provided for the organization of cities and has conferred upon the governing body of cities, whether operating under the city council or commission form of government, certain law-

making powers. ND Rev Code 1943, §§ 40–0101, 40–0801, 40–0901, 40–0501, 40–0502, 40–0607, 40–1311, 40–1102, 40–1105.

It is a fundamental rule that·the judiciary "cannot interfere with the legislative process of enacting the laws. During the process of legislation in any mode, the work of the lawmakers is not subject to judicial arrest or control or open to judicial inquiry." 11 Am Jur 902, Constitutional Law,·§ 200, 2 McQuillin, Municipal Corporations 2d ed pp 827 et seq. This rule is applicable to the enactment of an ordinance by the legislative body of a city, and a court. will not restrain such legislative body from pursuing and exercising its lawmaking powers, even though the ordinance which it is about to enact transcends its charter powers or violates the state or federal constitution. 2 High, Injunctions 4th ed § 1243, p 1250; Greenberg v. O'Brien, 149 Misc 866, 269 NYS 458; Gas & Electric Securities Co. v. Manhattan & Q. Traction Corp. (CCA2d) 266 F 625; 2 McQuillin, 2d ed pp 827 et seq.; New Orleans Waterworks Co. v. New Orleans, 164 US 471, 481, 41 L ed 518, 523, 17 S Ct 161; Des Moines Gas Co. v. Des Moines, 44 Iowa 505, 24 Am Rep 756; Pitman v. Drabelle, 267 Mo 78, 183 SW 1055, 1057, Ann Cas 1918D 601; 4 Pomeroy, Equity Jurisprudence 4th ed §§ 1762–1763, pp 4084–4092; Alpers v. San Francisco (CC) 12 Sawy 631, 32 F 503; Lewis v. Denver City Waterworks Co. 19 Colo 236, 34 P 993, 41 Am St Rep 248.

High (2 High, Injunctions, 4th ed § 1243, p 1250) says, "It is unquestionably true that purely legislative acts, such as the passage of resolutions, or the adoption of ordinances by a municipal body, even though alleged to be unconstitutional and void, will not be enjoined, since it is not the province of a court of equity to interfere with the proceedings of municipal bodies in matters resting within their jurisdiction, or to control in any manner the exercise of their discretion."

In Des Moines Gas Co. v. Des Moines, 44 Iowa 505, 24 Am Rep 756, supra, it was sought to enjoin passage of an ordinance on the ground that the ordinance would impair the obligations of plaintiff's contract and, therefore, would be unconstitutional. The Supreme Court of Iowa held that the court had no power

to interfere with the legislative body of the city in the enactment of the proposed ordinance. In its decision in the case the court said:

"The General Assembly is a co-ordinate branch of the State government, and so is the law-making power of public municipal corporations within the prescribed limits. It is no more competent for the judiciary to interfere with the legislative acts of the one than the other. But the unconstitutional acts of either may be annulled. Certainly the passage of an unconstitutional law by the General Assembly could not be enjoined. If so, under the pretense that any proposed law was of that character, the judiciary could arrest the wheels of legislation.

"Had the ordinance under which the plaintiff claims been enacted by the General Assembly, and the plaintiff acquired thereunder the same rights as under the ordinance, and the General Assembly thereafter attempted to enact a law in substance like the ordinance sought to be enjoined, could the judiciary interfere and by injunction restrain the action of the General Assembly on the ground that the law if enacted would 'impair the obligation of contracts'?" 44 Iowa at pp 509, 510, 24 Am Rep at pp 758, 759.

The laws of this state provide:

"A writ of certiorari shall be granted by the supreme court or district court when an officer, board, tribunal, or inferior court has exceeded the jurisdiction of such officer, board, tribunal, or inferior court, as the case may be, and there is no appeal, nor, in the judgment of the court, any other plain, speedy, and adequate remedy, and also when, in the judgment of the court, it is deemed necessary to prevent miscarriage of justice." Rev Code ND 1943, § 32–3301.

"The application must be made on affidavit by the party beneficially interested, . . ." Rev Code ND 1943, § 32–3302.

"Except as otherwise provided by law, the review upon a writ of certiorari cannot be extended further than to determine whether the inferior court, tribunal, board, or officer has pursued regularly the authority of such court, tribunal, board, or officer." Rev Code ND 1943, § 32–3309.

These statutory provisions were originally enacted by the legislative assembly of the Territory of Dakota and were continued in force as part of the laws of this state and also of the State of South Dakota. State ex rel. Johnson v. Clark, 21 ND 517, 527, 131 NW 715. In some respects these provisions are in a class by themselves and differ both from the common law and from the statutes of other states. (See 21 ND at p 528, 131 NW 715.) Indeed the statutes and the decisions in the several states differ to such degree that Corpus Juris Secundum (14 CJS p 127, § 6) says:

*"General propositions precisely defining when certiorari will lie are practically impossible of formulation because of the nature of the writ and of varying statutory provisions.*

"It is impossible to lay down any rule which will precisely define when certiorari will lie. This is sometimes true even as to the law of a particular state, and is especially true when it is attempted to formulate a rule broad enough to cover all jurisdictions. Even where not regulated by statute, the scope of the writ, as shown infra, § 9, is to some extent different in particular states, the remedy being more comprehensive in some states than in others. Thus, it should be kept in mind, in connection with the law hereinafter stated, that the decisions of a particular state as to the right to the writ may be of little or no value in other states where the scope of the writ is different."

Hence, decisions in states such as New Jersey and Georgia, where the scope of review has been extended, and the writ of certiorari "is used with noticeable liberality" (4 Standard Enc of Proc p 888; 14 CJS pp 149, 150, and cases cited in note 3 at p 150; 14 CJS p 152; 2 McQuillin, Municipal Corporations 2d ed at p 830), and statements in legal texts, and encyclopedias based upon such decisions, are frequently wholly inapplicable in this state, where the scope of the writ is so different.

The statutes of this state (quoted above) do not restrict review on certiorari to acts and proceedings judicial in nature, but in a proper case acts which partake of a legislative character may be reviewed. State ex rel. Johnson v. Clark, 21 ND

517, 131 NW 715, supra; State ex rel. Mayo v. Thursby-Butte Special School Dist. 45 ND 555, 178 NW 787. But in all cases review on certiorari is limited to questions of jurisdiction. Baker v. Lenhart, 50 ND 30, 195 NW 16; Livingston v. Peterson, 59 ND 104, 228 NW 816; State ex rel. Johnson v. Clark, 21 ND 517, 131 NW 715, supra; State ex rel. American Exp. Co. v. State Bd. of Assessment & Equalization, 3 SD 338, 53 NW 192. In other words, "certiorari will lie only where there is a want or excess of jurisdiction in the proceeding sought to be reviewed" (14 CJS p 167), and "upon every question except the mere question of power, the action of the inferior tribunal is final and conclusive." Baker v. Lenhart, 50 ND at p 47, 195 NW 16.

Corpus Juris (11 CJ 103) says: "In most of the western states, the writ (certiorari) lies only when there is a want or excess of jurisdiction in the proceeding complained of . . . This rule that want or excess of jurisdiction is the only ground prevails in Arizona, California, Colorado, Idaho, Montana, Nevada, North Dakota, Oklahoma, the Philippines, South Dakota, and Utah."

"Jurisdiction" is power to hear and determine and does not depend upon regularity of its exercise nor upon correctness of decision. Morehouse v. Superior Ct. 124 Cal App 38, 12 P2d 133; State ex rel. McGlothern v. Superior Ct. 112 Wash 501, 192 P 937, 939; American Bridge Co. v. Funk, 187 Iowa 397, 173 NW 119, 120; Baker v. Lenhart, 50 ND 30, 195 NW 16, supra; Christenson v. Grandy, 46 ND 418, 426, 427, 180 NW 18.

"The test of 'jurisdiction' is whether the tribunal has power to enter upon the inquiry, and not whether its conclusions in the course of it were right or wrong." Clark v. Rossier, 10 Idaho 348, 78 P 358, 3 Ann Cas 231.

Certiorari will issue only upon the application of a party beneficially interested. ND Rev Code 1943, § 32–3302. In other words, "In order to be entitled to a writ of certiorari, a petitioner must have an interest in the proceeding to be re-

viewed and must have sustained injury from" the act or ruling sought to be reviewed. 14 CJS p 198.

"Certiorari is not an appropriate remedy to prevent anticipated wrong or injury. The purpose of the writ is not to restrain or prohibit, but to annul." Molander v. Swenson, 54 ND 391, 210 NW 9; 14 CJS pp 123, 125, 319.

The application for writ of certiorari in this case fails to show that the relators have sustained any injury or have any substantial interest in the proceeding. It cannot be said that they are parties "beneficially interested" within the purview of the statute. 14 CJS p 198. Furthermore, the relators have mistaken their remedy, for the writ of certiorari may not be employed for the purpose of "enjoining and restraining the City of Minot, its common council, and officers, from enforcing or attempting to enforce that purported Ordinance No. 527."

In my opinion, the petition fails to show any act of the city commission reviewable on certiorari. The ordinance whose validity is sought to be reviewed related to the parking of vehicles on the streets. It is a general local law. It is enforceable by action in court. Any member of the city commission may introduce an ordinance no matter how arbitrary, or how foolish or oppressive it may be, and even though if enacted it would be in excess of the legislative powers delegated to the city or violative of the constitution of the state or nation, or both. State ex rel. Berry v. Superior Ct. 92 Wash 16, 159 P 92, 94. When an ordinance is introduced it becomes a matter, in the usual process of legislation, for the members of the commission to determine whether it shall or shall not not be enacted. One of the very questions which every lawmaking assembly must determine with respect to a proposed law is whether the measure is one which the lawmaking body has the power to enact. The members of the city commission, before entering upon the duties of office, are required to take and subscribe an oath of office precisely the same as the members of the legislature of the state. ND Rev Code 1943, §§ 44–0105, 40–0906; ND Const, § 211.

As has been noted, in the course of the enactment of an ordinance, the city commission and the members thereof are not subject to interference by either the executive or judicial departments. When an ordinance is introduced it is not only within the power, but it is the duty of the members of the city commission, to enter upon inquiry and consider whether the proposed ordinance, if enacted, will transcend the powers which the state legislature has delegated to the city commission, or will contravene the state or federal constitution. 11 Am Jur 791, Constitutional Law; 2 Dillon, Municipal Corporations 5th ed p 989, § 649; Greenfield School Dist. v. Hannaford Special School Dist. 20 ND 393, 127 NW 499. In considering these questions, the members of the city commission are performing their functions as lawmakers. They are conducting an inquiry which they have the power, and which it is their duty, to conduct. In short, they are acting within their jurisdiction. Each member has the right to vote for or against the enactment of the ordinance and he may neither be compelled to desist from voting nor compelled to vote for adoption or rejection.

Certiorari lies only to review questions of jurisdiction, and members of a lawmaking body, whether it be the state legislature or a city commission, in enactment of legislation, have the power and the duty to enter upon inquiry and to consider whether the proposed legislation will transcend their powers and violate the provisions of some superior law. This being so, it seems clear that it never could have been intended that the writ of certiorari will lie to determine whether a general ordinance enacted by a city commission is violative of the charter powers of the city or the provisions of the state or federal constitution. To utilize the writ for such purpose would extend the scope of review beyond that provided by the statute.

It is claimed that under the rule laid down by the court in State ex rel. Johnson v. Clark, 21 ND 517, 131 NW 715, supra, the validity of an ordinance may be reviewed on certiorari. I do not agree. State ex rel. Johnson v. Clark did not involve a general city ordinance or an ordinance at all. It involved an order, made after hearing, annexing certain territory to the

city. The action of the city council reviewed in that case was taken by the members of the city council acting under a statute vesting them with certain powers and prescribing the manner of their performance. If the legislature had seen fit so to do, it might have conferred the power to annex territory to a city on some non-judicial board or tribunal other than the city council. Oakman v. Wayne County, 185 Mich 359, 152 NW 89; Waslien v. Hillsboro, 48 ND 1113, 1119, 188 NW 738. The legislature might, for instance, have conferred the power upon the board of county commissioners (Oakman v. Wayne County (Mich) supra) or upon some special board created by the legislature, just as the legislature created an Annexation Review Commission, who on appeal may review the action of a city council in the annexation of territory to a city. Laws of ND 1915, ch 68.

The order involved in State ex rel. Johnson v. Clark was made under a law which authorized the city council to annex territory adjacent to a city by resolution passed by two-thirds of the entire members-elect of the city council. Laws of ND 1909, ch 58. It provided that the resolution be published in an official newspaper and posted within the territory proposed to be annexed. It further provided that if written protest, signed by a majority of the property owners of the territory proposed to be annexed, were filed with the city auditor, the city council must conduct a hearing and hear testimony for and against the proposed annexation, and that if after such hearing and a personal inspection of the territory proposed to be annexed, the city council is of the opinion that such territory ought to be annexed, such council by resolution passed by two-thirds of the entire members-elect thereof shall make and enter an order to the effect that the territory be included within the corporate limits of the city.

Under the laws of the state, a board of county commissioners is vested with authority to establish and incorporate a village, upon a petition of qualified voters residing within the territory proposed to be incorporated within the village. ND Rev Code 1905, §§ 2843–2853.

On March 18, 1909, the City Council of Minot passed a resolution extending the limits of the city so as to include within the city certain territory adjacent to the city and described in the resolution. A "written protest signed by a majority of the property owners of said proposed extension" was duly filed with the city auditor. On April 7, 1909, a petition dated March 5, 1909, signed by the required number of legal voters residing within the identical territory which was described in the resolution of the city council, was presented to the county commissioners of the county asking that the territory described in such petition be incorporated into a village to be known as North Minot. On April 9, 1909, the county commissioners approved the petition and took the necessary steps looking toward the incorporation of the Village of North Minot. Thereafter, the acts prescribed for the incorporation of a village were performed, and on April 27, 1909, the board of county commissioners of the county passed a resolution declaring and ordering that the territory in question " 'has been and it is incorporated as a village by the name of North Minot.'" (21 ND 521, 131 NW 715.) The final hearing upon the written protest of the property owners against the proposed annexation to the City of Minot was had before the city council on May 28, 1909. At the hearing before the city council, the protestants asserted that the city council had no authority in the matter; that the territory proposed to be annexed had already been incorporated into a village by the order of the county commissioners, made April 27, 1909; and the proceedings had with respect to the incorporation of the village were introduced and made a matter of record at the hearing had before the city council. On May 29, 1909, the city council made an order " 'That the limits of said city of Minot be, and the same are hereby extended as follows: (Here follows a description of the property.) And that said territory hereinbefore described, and the whole thereof, is a part of the city of Minot, and within the corporate limits thereof.'" 21 ND 521, 131 NW 715.

State ex rel. Johnson v. Clark (ND) supra, did not involve action taken by the city council in the enactment of an ordi-

nance. It involved action taken and an order made by the city council under a statute delegating to the city council authority to annex territory to the city. The statute was restricted to the annexation of territory to a city and dealt with no other subject. The statute prescribed the conditions and the manner in which the powers conferred by it must be exercised. The city council had no authority, that is, it had no jurisdiction, to make an order annexing territory to a city except upon compliance with and in accordance with the provisions of the statute. The city council had no authority under the statute, that is it had no jurisdiction, to annex to the city adjacent territory which was then within the limits of an incorporated village. North Fargo v. Fargo, 49 ND 597, 192 NW 977; 1 McQuillin, Municipal Corporations 2d ed § 297, p 824; State ex rel. Johnson v. Clark, 21 ND 517, 131 NW 715, supra.

In State ex rel. Johnson v. Clark, two governmental bodies claiming jurisdiction over the same territory had taken affirmative and conflicting action. The board of county commissioners had made an order incorporating the territory into a village and the city council had made an order annexing the same territory to the City of Minot. Upon the hearing of the annexation proceedings, property owners within the territory which it was proposed to annex appeared and challenged the jurisdiction of the city council to proceed with the hearing and make an order of annexation. The question thus presented was that of jurisdiction of the city council over the pending annexation proceeding and over the territory involved therein, for of course, "jurisdiction to incorporate the territory . . . could not inhere in both the board of county commissioners and the city council of the City of Minot at the same time." (State ex rel. Mayo v. Thursby-Butte Special School Dist. 45 ND at p 559, 178 NW 787). If the territory had been incorporated into a village by the order of the county commissioners made April 27, 1909, the city council was without authority to annex the territory thereafter and the hearing conducted in May, 1909, and the order of annexation then made would be without authority. North Fargo v. Fargo, 49 ND 597, 192 NW 977, supra;

1 McQuillin, Municipal Corporations 2d ed § 297, p 824; State ex rel. Johnson v. Clark, 21 ND 517, 131 NW 715, supra.

This court has held that a proceeding for the annexation of territory to a city requires the exercise of legislative powers, and hence a court may not be vested with power to hear and determine an annexation proceeding which requires the exercise of such legislative powers. (Glaspell v. Jamestown, 11 ND 86, 88 NW 1023). But it has, also, recognized that there are questions in annexation proceedings the determination of which require the exercise of judicial or quasi-judicial powers. Glaspell v. Jamestown, 11 ND at p 89, 88 NW at p 1025; Mogaard v. Garrison, 47 ND at p 472, 182 NW at p 760.

The determination of the question presented in State ex rel. Johnson v. Clark, 21 ND 517, 131 NW 715, supra, whether the territory purported to be annexed to the City of Minot by the order of the city council made May 29, 1909, had previously been incorporated into a village by a valid order made by the county commissioners on April 27, 1909, and hence was not thereafter subject to annexation by the city council required the exercise of judicial powers.

The decision in State ex rel. Johnson v. Clark, 21 ND 517, 131 NW 715, supra, furnishes no support for the contention that certiorari lies to review the validity of a city ordinance. That question was not involved in that case.

"It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used." Cohen v. Virginia, 6 Wheat (US) 264, 399, 5 L ed 257, 290.

"It is a general rule," said Chief Justice Marshall (Ogden v. Saunders, 12 Wheat (US) 333, 6 L ed 647) ". . . that the positive authority of a decision is co-extensive only with the facts on which it is made."

BURKE, J.. (Concurring specially) Entirely aside from the question of whether, in a proper case, certiorari will lie to review the legislative acts of the governing board of a municipality and of the extent to which such a review will be carried,

I am satisfied that review by certiorari is not available to rela·
tors in this case.

Relators instituted this proceeding as taxpayers and as in-
dividuals. As individuals they allege that the so-called park-
ing-meter ordinance injures them because it eliminates parking
stands for their taxi-cabs and denies them the right to stop on
the streets to load and unload passengers. As I see it the con-
nection between the establishment of parking-meters, and the
denial of the right to taxi-cab stands in congested areas is no
more than coincidental. The revocation of a license to maintain
parking stands within congested areas of a city does not invade
any of the legal rights of the relators. 42 CJ 652, 653. Fur-
thermore, the allegation that the "parking-meter ordinance"
prohibits stopping on the streets for the purpose of loading
and unloading passengers has no foundation in fact. An ap-
plication for a writ of certiorari may be made only by persons
beneficially interested. Rev Code 1943, § 32–3302. Relators
have not shown a sufficient interest to enable them to maintain
this proceeding as individuals.

It is difficult to ascertain from the petition the exact nature
of relators' claimed injury as taxpayers. Certiorari, however,
is only available "where there is no appeal, nor in the judg-
ment of the court any other plain, speedy and adequate reme-
dy." Rev Code 1943, § 32–3301. If relators were suffering or
about to suffer any injury as taxpayers there was available
to them the very appropriate remedy of a taxpayers suit for
an injunction. As was said in Molander v. Swenson, 54 ND
391, 210 NW 9, 10: "Obviously certiorari may not be used as
a substitute for injunction."

I concur in the principles stated in the syllabus and in the
affirmance of the order denying the writ.