PARKER HOTEL COMPANY, a corporation, et al., Plaintiffs and Appellants,

v.

CITY OF GRAND FORKS, a municipal corporation, et al., Defendants and Respondents,

and

Royce LaGrave, as Director of the Grand Forks Urban Renewal Agency, and Myron E. Denbrook, James L. Lamb, and Jason Grabau, as members of the Grand Forks Urban Renewal Agency Commission, Defendants.

Civ. No. 8612.

Supreme Court of North Dakota.

May 15, 1970.

Rehearing Denied June 12, 1970.

Daniel S. Letnes and Robert A. Alphson, Grand Forks, for plaintiffs and appellants.

J. Gordon Caldis, Grand Forks, for defendants and respondents.

Robert Vaaler of Stokes, Vaaler, Gillig, Warcup & Woutat, Grand Forks, amicus curiae.

TEIGEN, Chief Justice.

This is an appeal from a judgment quashing and vacating a writ of certiorari.

The plaintiffs brought this certiorari proceeding in the district court, claiming that the City Council of the City of Grand Forks exceeded its jurisdiction when it created Street Improvement District No. 5, Project No. 1999. It was created for the purpose of defraying the city's share of the cost of construction of a proposed overhead railroad-highway separation structure (hereinafter referred to as an "overpass"), with the remainder of the cost to be contributed by the State of North Dakota by agreement with the North Dakota Highway Department. Under the city's plan, special assessments would be levied against the property located within the street improvement district for the purpose of raising the city's share of the cost of the construction of the overpass. The city's share of the cost of the improvement, in accordance with this agreement, will be $1,500,000, or 75% of the total estimated cost of the project. It also appears that the Grand Forks Urban Renewal Agency has taken steps to secure a Federal grant in excess of $5,000,000 to carry out a program of urban renewal in a portion of the city's downtown section which is not included in the street improvement district. To carry out the program of urban renewal, the city agreed to construct the overpass in question as part of its equivalent to a cash contribution to qualify for the Federal urban renewal grant. The urban renewal project involves an expenditure of nearly $7,000,000.

The overpass project was initiated upon a petition submitted to the City Council of the City of Grand Forks by a group of owners of property located within the street improvement district. In the proceedings to establish the street improvement district, protests were filed by another group of owners of property within the said district. This area is generally known as the central business district of Grand Forks. The protests were found insufficient to block the proposal for the creation of the street improvement district and the resolution creating it was adopted. Subsequent thereto, some of the protestants joined as plaintiffs in the commencement of this proceeding in certiorari, alleging that the city has exceeded its jurisdiction in adopting the resolution establishing the street improvement district. In their application for the writ, the plaintiffs allege that the City Council of the City of Grand Forks exceeded its jurisdiction in that: (1) an overpass is not an improvement of streets within the provisions of Section 40–

22–06, N.D.C.C.; (2) the proposed overpass is not an improvement for which a special improvement district may be created because its benefit will be general rather than special; and (3) no evidence was adduced by the city to prove the necessity for the overpass.

On application, the trial court issued its writ of certiorari commanding the city to certify and return fully a transcript of the records and proceedings pertaining to the creation of the special improvement district, and requiring the city, in the meantime, to desist from further proceedings in the matter to be reviewed. Pursuant to the command contained in the writ, the city made a return and certified its records and proceedings to the court. No other evidence was adduced at the hearing. The court considered the records and proceedings certified to it, pursuant to the writ, and determined that the city had not exceeded its jurisdiction and quashed and vacated its writ. Judgment was entered accordingly and the plaintiffs have appealed.

Section 32–33–01, N.D.C.C., provides:

"A writ of certiorari shall be granted by the * * * district court when an officer, board, tribunal, or inferior court has exceeded the jurisdiction of such officer, board, tribunal, or inferior court, as the case may be, and there is no appeal, nor, in the judgment of the court, any other plain, speedy, and adequate remedy, and also when, in the judgment of the court, it is deemed necessary to prevent miscarriage of justice."

■ This statute has been considered by this court on a number of occasions and we have uniformly held that certiorari will lie only to review acts in excess of jurisdiction and cannot be extended further than to determine whether the inferior court, tribunal, or board has regularly pursued its authority. City of Fargo v. Annexation Review Commission (N.D.1963), 123 N.W.2d 281; State ex rel. Dreyer v. Brekke, 75 N.D. 468, 28 N.W.2d 598; and the cases cited therein.

Jurisdiction is defined in State ex rel. Dreyer v. Brekke, *supra,* as follows:

"Jurisdiction within the meaning of that term as used in the statute, section 32–3301, N.D.R.C. 1943 means 'power and authority to act with respect to any particular subject matter.' "

Section 32–33–09, N.D.C.C., limits the extent of review. It provides:

"Except as otherwise provided by law, the review upon a writ of certiorari cannot be extended further than to determine whether the inferior court, tribunal, board, or officer has pursued regularly the authority of such court, tribunal, board, or officer."

There is no contention made by these plaintiffs that the statutory procedure required to be followed in the enactment of the resolution was not strictly complied with. Their challenge is to the power of the city council to establish a special improvement district for the purpose of levying special assessments to pay the city's share of the cost for the construction of an overpass.

■ Section 130 of the Constitution directs the Legislative Assembly to provide, by general law, for the organization of municipal corporations. This section gives the Legislative Assembly the power to create and control the government of cities. State ex rel. Shaw v. Frazier, 39 N.D. 430, 167 N.W. 510; State ex rel. City of Fargo v. Wetz, 40 N.D. 299, 168 N.W. 835, 5 A.L.R. 731; Murphy v. City of Bismarck (N.D.1961), 109 N.W.2d 635. Since the Constitution directs the Legislative Assembly to provide, by general law, for the organization of municipal corporations, these municipal corporations, when created pursuant to law, become agencies of the State and have only the powers expressly conferred upon them by the Legislature, or such as may be necessarily implied from the powers expressly granted. Megarry Bros. v. City of St. Thomas (N.D.1954), 66 N.W.2d 704; Murphy v. City of Bismarck, *supra.*

A city is a municipal corporation (Section 40–01–01, N.D.C.C.) and it takes its powers from the statutes which give it life. In defining its powers, the rule of strict construction applies and any doubt as to their existence, or extent, must be resolved against the city. However, if the power is determined to exist, the rule of strict construction no longer applies and the manner and means of exercising those powers, where not prescribed by the Legislature, are left to the discretion of the municipal authorities. Lang v. City of Cavalier, 59 N.D. 75, 228 N.W. 819; James v. Young, 77 N.D. 451, 43 N.W.2d 692, 20 A. L.R.2d 1086. We therefore look to the statutes to determine whether the city has exceeded its jurisdiction.

In Title 40, N.D.C.C., we find an enumeration of the powers of all municipalities. Section 40–05–01, N.D.C.C., provides:

"The governing body of a municipality shall have the power:

"1. *Ordinances.* To enact or adopt all such ordinances, resolutions, and regulations, not repugnant to the constitution and laws of this state, as may be proper and necessary to carry into effect the powers granted to such municipality or as the general welfare of the municipality may require, and to repeal, alter, or amend the same. * * *

* * * * * *

"8. *Streets, sidewalks, and public grounds.* To lay out, establish, open, alter, repair, clean, widen, vacate, grade, pave, park, or otherwise improve and regulate the use of *streets,* * * *

* * * * * *

"22. *Extending ways and pipes over railroad property.* To extend by condemnation or otherwise any *street,* alley, or highway over, under, or across, * * * any railroad track, right of way, or land of any railroad company

within the corporate limits; * * *." [Emphasis added.]

Section 40–22–01, N.D.C.C., provides:

"Any municipality, upon complying with the provisions of this chapter, may defray the expense of any or all of the following types of improvements by special assessments:

"1. * * *

"2. The *improvement of the municipal street system* and any part thereof, including any one or more of the processes of acquisition, opening, widening, grading, graveling, paving, repaving, surfacing with tar, asphalt, bituminous or other appropriate material, resurfacing, resealing, and repairing of any street, highway, avenue, alley, or public place within the municipality, and the construction and reconstruction of storm sewers, curbs and gutters, sidewalks, and service connections for water and other utilities, and the installation, operation, and maintenance of street lights and all types of decorative street lighting, including but not restricted to Christmas street lighting decorations;

* * * * * *

"In planning an improvement project of a type specified in any one of the foregoing subsections, the governing body may include in such plans any and all items of work and materials which in its judgment are necessary or reasonably incidental to the completion of an improvement project of such type." [Emphasis added.]

Section 40–22–06, N.D.C.C., provides:

"Any municipality in this state, through its governing body, may enter into an agreement with the highway department of the state of North Dakota, * * * *for the improvement of streets,* * * * under the terms of which the contract for such work is to be let by the state highway department * * *, and for this purpose may create a special im-

provement district or districts. No such agreement shall be entered into until and unless the governing body certifies that they have obtained authority in accordance with this section to issue improvement warrants to finance the amount that the municipality will be obligated to pay thereunder, * * *. If any portion of the cost is to be paid by the levy of special assessments, the governing body shall by resolution declare the necessity of the improvement, setting forth its general nature, the approximate amount or fraction of the cost which the municipality will be obligated to pay under the agreement, and the fact that this amount, or such lesser amount as the governing body may specify, is proposed to be paid by the levy of special assessments upon property determined to be benefited by the improvement. * . * * The resolution of necessity shall be published once each week for two consecutive weeks in the official newspaper of the municipality and protests may be filed and their sufficiency to bar the improvement shall be determined in accordance with sections 40–22–16 to 40–22–18, inclusive; * * *. In districts created under this section the governing body may dispense with all requirements, other than those herein stated, preliminary to the construction of an improvement by the special assessment method, including the preparation and approval of plans and specifications, advertisement for bids, and execution of contracts and bonds. At any time after the period for filing protests has expired and the protests filed, if any, have been heard and determined to be insufficient, the governing body may issue warrants on the fund of the improvement in the total amount for which the municipality is obligated under the agreement, and may cause to be certified to the special assessment commission that portion of the cost to be borne by the property owners within the district, and the assessment of such amount may be made and such warrants may be issued as in other cases

provided for in chapters 40–23 and 40–24."

The record, certified by the city to the trial court, reflects that a petition for the creation of a special improvement district for the improvement of the municipal street system by means of a four-lane, vehicular road linking the southern and central business districts, and linking Highway I–29, via the 6th Avenue South entry, to the south business district of Grand Forks, was presented to the city council. The council referred the matter to the committee of the whole for investigation, consideration, and report back with a recommendation. Subsequent thereto, at the meeting of June 4, 1969, a favorable report having been filed by the committee, a resolution was introduced and passed to establish Street Improvement District No. 5, Project No. 1999. The resolution adopted provides:

" * * * that Street Improvement District No. 5, Project No. 1999, be established for the purpose of constructing an overhead railroad-highway separation structure under a proposed agreement with the Commissioner of the State Highway Department; and that the properties to be assessed for such improvement be within the limits thereof, to-wit: * * *"

The resolution then describes the properties to be included, by lots and blocks, and continues:

"FURTHER RESOLVED, that it is hereby declared *necessary* to construct a street improvement of *special benefit* to said district consisting of an overhead railroad-highway separation structure as an extension of DeMers Avenue southwesterly over the railroad track to near 8th and 9th Streets South near 4th and 5th Avenues South, all in accordance with the provisions of said proposed agreement, under which the City will be obligated to pay $1,500,000.00 of the cost thereof, and proposes to pay this sum together with administrative, legal and

other authorized costs by the levy of special assessments upon property within said district determined to be benefitted by the improvement. * * * " [Emphasis added.]

The resolution also directed the city auditor to file and make available for public inspection certified copies of the resolution and of the agreement and to cause the resolution to be published, allowing protests against the improvement to be filed pursuant to law. The resolution was published according to law and a number of protests were filed. When the time for filing protests had expired, the city council reviewed them and found that the protests represented only 23.55% of the area of the district. It was determined, by resolution, that the protests were insufficient. A resolution was then adopted to enter into the agreement with the highway department of the State of North Dakota for the design and construction of the overpass. The agreement provides that the city will contribute $1,500,000 toward the cost of said project by the levy of special assessments on property within Street Improvement District No. 5, as previously established by resolution adopted on June 4, 1969. The State will pay the balance of the total estimated cost of $2,000,000. The agreement also provides that the State will supervise and do the design and construction engineering. The agreement is drawn in accordance with the provisions of Section 40–22–06, N.D.C.C. Thereafter, this proceeding in certiorari was commenced.

■ A review of the statutes that we have quoted from establishes that a city may carry into effect the powers granted to it by the adoption of resolutions. It is empowered to lay out, establish, open, grade, pave, or otherwise improve and regulate the use of its streets, and to extend any street over any railroad track, right of way, or land of any railroad company within the corporate limits.

■ It is empowered to defray the expense for the improvement of the munic-

ipal street system, or any part thereof, by special assessments. It may enter into an agreement with the highway department of the State for the improvement of streets and, for this purpose, may create special improvement districts. If a special improvement district is created under the statute allowing a city to enter into an agreement with the highway department of the State of North Dakota, the city may dispense with all requirements preliminary to the construction of an improvement by the special assessment method, including the preparation and approval of plans and specifications, provided it has obtained authority in accordance with law to issue improvement warrants to finance the amount that the city will be obligated to pay thereunder, and has, by resolution of the governing body, declared the necessity of the improvement. Under those circumstances, it is empowered to determine what property will be benefited by the improvement and, when it has been determined that the protests filed are insufficient, the city may issue warrants on the fund of the improvement in the total amount for which the city is obligated under the agreement, and then cause to be certified to the special assessment commission that portion of the cost to be borne by the property owners within the district, and the assessment of such amount may be made and the warrants issued as in other cases provided by law.

■ The plaintiffs argue, as we stated earlier in this opinion, that the construction of an overpass is not an "improvement of streets" as contained in Section 40–22–06, N.D.C.C., and, further, that the term "improvement of streets" as used in Section 40–22–06, N.D.C.C., is not synonymous with "improvement of a municipal street system", provided by Section 40–22–01, N.D.C.C. We think it is both. The statutes must be read together to determine the intent of the Legislature and we hold that "streets" referred to in Section 40–05–01, subsections 8 and 22, N.D.C.C., and "the municipal street system" referred to in Section 40–22–01, N.D.C.C., and "streets"

referred to in Section 40–22–06, N.D.C.C., are synonymous to the extent that they all have reference to the streets of a municipality. It is noted that subsection 22 of Section 40–05–01, N.D.C.C., specifically empowers a city to extend any street "over" any railroad track, right of way, or land of any railroad company within the corporate limits, and this necessarily implies the construction of an overpass. The overpass, when constructed, will become a part of a street, is an improvement of streets, and becomes a part of a municipal street system. In Barsaloux v. City of Chicago, 245 Ill. 598, 92 N.E. 525, the Illinois Supreme Court held that a statute authorizing cities to own, operate, or lease street railways applies to underground and elevated, as well as surface, street railways.

In the case of In re New York Dist. Ry. Co., 107 N.Y. 42, 14 N.E. 187, it was held that an underground railway in a city or village following the line of the streets is to be deemed a street railway within the meaning of that phrase as used in the Constitution. In discussing the matter, the court said:

"When the work is all done, the street will consist of two stories or surfaces: one carrying the ordinary· traffic and movement lessened by so much as is diverted to the swifter transit of the other, and both together will do what one alone did to the extent of its capacity. Such a road is to be deemed a street railway, not only because it subserves street purposes, and reaps the benefit of street easements, and occupies and modifies the street surface, but also because it is fully within the mischiefs which the constitutional provision was designed to redress and prevent. * * * The same reasons which dictated a constitutional protection against roads on or above the surface of the streets apply to those which are built beneath in the manner here contemplated, and these should justly be deemed street railroads within the meaning of that phrase as used in the constitution."

In City of Beaumont v. Priddie (Tex. Civ.App.1933), 65 S.W.2d 434 (reversed in Texas & N. O. R. Co. v. Priddie (Tex. Com.App.), 95 S.W.2d 1290, on other grounds), it was held, in a bond election problem, that the streets of a city include not only the surface but sufficient above and below the surface for all proper street purposes.

In Village of Sandpoint v. Doyle, 14 Idaho 749, 95 P. 945, the Supreme Court of Idaho held that, under their statute, a bridge is a "highway" and subject to the laws applicable to highways.

If the public interest requires that all or a portion of a street should be constructed above the surface of the land, we see no valid reason why the power to meet such public necessity should be denied in respect to the construction of an overpass that does not apply with equal force to surface streets. Streets, whether constructed on the surface or above the surface, are intended to furnish the public with a convenient means of travel and constitute an "improvement of the municipal street system" and an "improvement of streets", as authorized under the statutes and, where the improvement is to be constructed on an agreement with the highway department of the State, it may be paid for by the special assessment method, as provided by Section 40–22–06, N.D.C.C.

We find that the City Council of the City of Grand Forks did not exceed its jurisdiction when it enacted the resolution creating Special Improvement District No. 5, Project 1999. We therefore affirm the judgment.

In the consideration of this appeal, a practice question arose which we feel should be discussed in this opinion.

The plaintiffs on this appeal have demanded a trial de novo of the entire case. Certiorari proceedings are special proceedings and not actions. Trial de novo on appeal is permissible only on an appeal from a judgment in an action tried

to the court without a jury. Section 28–27–32, N.D.C.C. We specifically held in City of Fargo v. Annexation Review Commission (N.D.1967), 148 N.W.2d 338, that "as certiorari is a special proceeding, and not an action, a trial de novo is not available in the supreme court."

An appeal in a special proceeding is not triable de novo in the Supreme Court under Section 28–27–32, N.D.C.C., but such appeal is governed by Section 28–18–09, N.D.C.C., requiring that specifications of error be prepared and served. Collette v. Matejcek (N.D.1966), 146 N. W.2d 156. The appellants, in this case, have not served and filed specifications of error.

Where an appeal is taken which requires that specifications of error be served, but were not served, the appellate court will consider only errors which appear on the face of the judgment roll proper. As to such errors, it is sufficient that they be argued in the brief. Collette v. Matejcek, *supra*.

We have reviewed the judgment roll in the light of the arguments presented in the plaintiffs' brief and find that the only argument presented which is reviewable on this appeal is the one we have decided above.

The plaintiffs have raised other issues in their brief but these cannot be considered by us on this appeal for two reasons:

1. They were not specified, as required by law, and do not appear on the face of the judgment roll.

2. The issues argued attempt to challenge the action taken by the city council on grounds which do not go to the question of jurisdiction, or excessive jurisdiction, and, therefore, are not cognizable in a certiorari proceeding. Certiorari will lie only to review acts in want or excess of jurisdiction. State ex rel. Dreyer v. Brekke, *supra*; City of Fargo v. Annexation Re-view Commission (N.D.1963), 123 N.W.2d 281.

The arguments which these plaintiffs, as appellants, urge, in general, consist of the following:

1. It was error to determine that the proposed overpass, when constructed, will specially benefit the property in the special improvement district.

2. The contemplated overpass may not comply with the regulatory provisions of the Public Service Commission for railroad crossings.

3. The city council erred in its estimate of the required amount of special assessments to be paid by the property owners.

4. There is no evidence of record to sustain a finding of necessity for the overpass.

The issues posed by these arguments refer to matters of judgment and discretion of the city council acting within its powers and do not, if proved, establish that it acted in want or in excess of its jurisdiction. When the city council is clothed with a valid enactment with the power to decide a question of fact, the exercise of its judgment and discretion in doing so cannot be controlled by the court in a certiorari proceeding. Baker v. Lenhart, 50 N.D. 30, 195 N.W. 16; State ex rel. Claver v. Broute, 50 N.D. 753, 197 N. W. 871; Martin v. Morris, 62 N.D. 381, 243 N.W. 747; State ex rel. Olson v. Welford, 65 N.D. 522, 260 N.W. 593; Bryan v. Olson, 68 N.D. 605, 282 N.W. 405; Livingston v. Peterson, 59 N.D. 104, 228 N.W. 816; State ex rel. Dreyer v. Brekke, supra; City of Fargo v. Annexation Review Commission (N.D.1963), 123 N.W.2d 281.

STRUTZ, ERICKSTAD, PAULSON and KNUDSON, JJ., concur.

TEIGEN, Chief Justice, on petition for rehearing.

The plaintiffs, who are the appellants in a petition for rehearing, argue that several

points raised by the pleadings and the arguments, which were not decided by this court, are jurisdictional questions which may be reviewed and decided in a certiorari proceeding. Succinctly stated, these points are: (1) that the benefits to be derived from the overpass are general and not special; (2) that the overpass does not abut on the property to be specially assessed; (3) that the overpass is located in a different part of the city than the property to be specially assessed; (4) that the court has held, in effect, that there is no distinction between a general and special improvement of streets; and (5) that there are other properties in the City of Grand Forks which will be benefited but which were omitted from the special improvement district, and which properties are adjacent to the overpass. The points listed above are merely a restatement of arguments which were made in the original presentation to this court and were considered by this court before it issued its opinion.

Rule 16 of the Rules of Practice in the Supreme Court of the State of North Dakota sets forth that a petition for rehearing "must not be a restatement or reargument of matters contained in the brief," and that such petition must distinctly point out something which has been overlooked in the statutory provisions or the controlling principles of law, or that it was not called to the attention of the court upon the argument or in the briefs. Fish v. France, 71 N.D. 499, 2 N.W.2d 537.

We find nothing new in the petition for rehearing. All of the points enumerated above were covered near the end of the original opinion where we summed up the additional arguments made by the plaintiffs in these words: "It was error to determine that the proposed overpass, when constructed, will specially benefit the property in the special improvement district." Our reason was supported by the statement that "when the city council is clothed with a valid enactment with the power to decide a question of fact, the exercise of its judgment and discretion in doing so cannot be controlled by the court in a certiorari proceeding." The issues raised in this petition refer to matters of judgment and discretion of the city council acting within its powers and do not, if proved, establish that it acted in want or in excess of its jurisdiction. Jurisdiction, within the meaning of that term as used in the statute of certiorari, means power and authority to act with respect to any particular subject matter.

"Jurisdiction within the meaning of that term as used in the statute, section 32-3301, N.D.R.C. 1943 means 'power and authority to act with respect to any particular subject matter.'" State ex rel. Dreyer v. Brekke, 75 N.D. 468, 28 N.W. 2d 598.

In our opinion we determined that the city was empowered to construct an overpass as a part of a street and that the construction of an overpass constitutes an improvement of the streets and becomes a part of a municipal street system. We further held that the cost thereof may be defrayed by the special assessment method and that, in doing so, the city may enter into an agreement with the State to share the cost. The error in judgment, if any there be, in exercising its power does not constitute excess of jurisdiction. State ex rel. Dreyer v. Brekke, *supra*.

For these reasons, the petition for rehearing is denied.