Michael **CHERNICK** et al., Plaintiffs
and Appellants,

v.

**CITY OF GRAND FORKS**, a municipal corporation, et al., Defendants and
Appellees.

Civ. No. 8892.

Supreme Court of North Dakota.

Aug. 13, 1973.

Daniel S. Letnes, Grand Forks, for plaintiffs and appellants.

Allen I. Olson, Atty. Gen., Bismarck, and Caldis & Arneson, Grand Forks, for defendants and appellees.

PAULSON, Judge.

This is an appeal from a summary judgment rendered by the Grand Forks County District Court. The summary judgment, dated November 24, 1972, dismissed the plaintiffs-appellants' complaint, which sought to void a special assessment district created in Grand Forks for the purpose of building an overpass over railroad tracks passing through that city.

This is the second time we consider the subject matter involved in this case. Our first opinion on the subject can be found in Parker Hotel Company v. City of Grand Forks, 177 N.W.2d 764, 767–768 (N.D. 1970), wherein the essential facts of the instant case were stated by this court as follows:

"The plaintiffs brought this certiorari proceeding in the district court, claiming that the City Council of the City of Grand Forks exceeded its jurisdiction when it created Street Improvement District No. 5, Project No. 1999. It was created for the purpose of defraying the city's share of the cost of construction of a proposed overhead railroad-highway separation structure (hereinafter referred to as an 'overpass'), with the remainder of the cost to be contributed by the State of North Dakota by agreement with the North Dakota Highway Department. Under the city's plan, special assessments would be levied against the property located within the street improvement district for the purpose of raising the city's share of the cost of the construction of the overpass. The city's share of the cost of the improvement, in accordance with this agreement, will be $1,500,000, or 75% of the total estimated cost of the project. It also appears that the Grand Forks Urban Renewal Agency has taken steps to secure a Federal grant in excess of $5,000,000 to carry out a program of urban renewal in a portion of the city's downtown section which is not included in the street improvement district. To carry out the program of urban renewal, the city agreed to construct the overpass in question as part of its equivalent to a cash contribution to qualify for the Federal urban renewal grant. The urban renewal project involves an expenditure of nearly $7,000,000.

"The overpass project was initiated upon a petition submitted to the City Council of the City of Grand Forks by a group of owners of property located within the street improvement district. In the proceedings to establish the street improvement district, protests were filed by another group of owners of property within the said district. This area is generally known as the central business district of Grand Forks. The protests were found insufficient to block the proposal for the creation of the street improvement district and the resolution creating it was adopted. Subsequent thereto, some of the protestants joined as plaintiffs in the commencement of this proceeding in certiorari, alleging that the city has exceeded its jurisdiction in adopting the resolution establishing the street improvement district. In their application for the writ, the plaintiffs allege that the City Council of the City of Grand Forks exceeded its jurisdiction in that: (1) an overpass is not an improvement of streets within the pro-

visions of Section 40–22–06, N.D.C.C.; (2) the proposed overpass is not an improvement for which a special improvement district may be created because its benefit will be general rather than special; and (3) no evidence was adduced by the city to prove the necessity for the overpass.

"On application, the trial court issued its writ of certiorari commanding the city to certify and return fully a transcript of the records and proceedings pertaining to the creation of the special improvement district, and requiring the city, in the meantime, to desist from further proceedings in the matter to be reviewed. Pursuant to the command contained in the writ, the city made a return and certified its records and proceedings to the court. No other evidence was adduced at the hearing. The court considered the records and proceedings certified to it, pursuant to the writ, and determined that the city had not exceeded its jurisdiction and quashed and vacated its writ. Judgment was entered accordingly and the plaintiffs have appealed."

In *Parker Hotel, supra,* the plaintiffs, who are substantially the same plaintiffs involved in the instant case, claimed that the City of Grand Forks [hereinafter City] exceeded its jurisdiction when it created Street Improvement District No. 5, Project No. 1999, to build an overpass over railroad tracks running through Grand Forks. In *Parker Hotel,* a certiorari proceeding, it was held that the City did not exceed its jurisdiction in creating the special improvement district. In *Parker Hotel, supra,* 177 N.W.2d at 774, we found that:

" . . . the city was empowered to construct an overpass as a part of a street and that the construction of an overpass constitutes an improvement of the streets and becomes a part of a municipal street system. We further held that the cost thereof may be defrayed by the special assessment method and that, in doing so, the city may enter into an agreement with the State to share the cost."

In this action the plaintiffs are attempting to void the special assessments determined by the special assessment commission in Grand Forks by claiming:

1) That §§ 40–22–06, 40–22–08, and 40–22–09, N.D.C.C., are unconstitutional.

2) That exempting the Urban Renewal Area, adjacent to the overpass, from the special improvement district was illegal.

3) That the creation of Special Improvement District No. 5, Project No. 1999, and the determination of assessments was inequitable, arbitrary, and discriminatory.

4) That the determination of benefits by the special assessment commission was based upon speculation, conjecture, and pure guess.

The district court granted summary judgment in favor of the defendant, City of Grand Forks, as it appeared to that court that there was no genuine issue as to any material fact not previously adjudicated in Parker Hotel Company v. City of Grand Forks, *supra,* that case being res judicata of the issues raised in this action.

The plaintiffs-appellants present seven issues for review by this court. Four of the issues are rephrasings of their previously stated claims to void the special assessments; the remaining issues are whether or not the district court erred in granting summary judgment for the City, whether the *Parker Hotel* case is res judicata of the issues in this case, and whether equity requires this court to order a review of the method and formula used in determining the special assessments which were confirmed by the Grand Forks City Council.

We will first address ourselves to the constitutionality of the challenged stat-

utes, namely, §§ 40–22–06, 40–22–08, and 40–22–09, N.D.C.C., which read as follows:

"40–22–06. *Municipality may enter into agreement with highway department or county for certain improvements.—* Any municipality in this state, through its governing body, may enter into an agreement with the highway department of the state of North Dakota, or with the board of county commissioners of the county in which such municipality is located, or both, for the improvement of streets, sewers, and water mains, or of any of such facilities, under the terms of which the contract for such work is to be let by the state highway department or by the board of county commissioners, or by both jointly, and for this purpose may create a special improvement district or districts. No such agreement shall be entered into until and unless the governing body certifies that they have obtained authority in accordance with this section to issue improvement warrants to finance the amount that the municipality will be obligated to pay thereunder, over and above the amount of any bonds which have been voted and any other funds which are on hand and properly available for such purpose. If any portion of the cost is to be paid by the levy of special assessments, the governing body shall by resolution declare the necessity of the improvement, setting forth its general nature, the approximate amount or fraction of the cost which the municipality will be obligated to pay under the agreement, and the fact that this amount, or such lesser amount as the governing body may specify, is proposed to be paid by the levy of special assessments upon property determined to be benefited by the improvement. Any portion of the cost for which the municipality is obligated and which is not assessed upon benefited property or paid from other funds may be agreed to be paid by general taxation of all the taxable property in the municipality, if approval for the incurring of such debt is obtained

and provision for the payment thereof is made in accordance with section 40–24–10. The resolution of necessity shall be published once each week for two consecutive weeks in the official newspaper of the municipality and protests may be filed and their sufficiency to bar the improvement shall be determined in accordance with sections 40–22–16 to 40–22–18, inclusive; except that if under the terms of the resolution of necessity the portion of the cost of the project to be assessed upon benefited property does not exceed twenty-five percent of the total cost to be paid by the highway department or county and municipality, written protests by the owners of seventy-five percent of the property liable to be assessed for the improvement shall be required to bar further proceedings with reference thereto. In districts created under this section the governing body may dispense with all requirements, other than those herein stated, preliminary to the construction of an improvement by the special assessment method, including the preparation and approval of plans and specifications, advertisement for bids, and execution of contracts and bonds. At any time after the period for filing protests has expired and the protests filed, if any, have been heard and determined to be insufficient, the governing body may issue warrants on the fund of the improvement in the total amount for which the municipality is obligated under the agreement, and may cause to be certified to the special assessment commission that portion of the cost to be borne by the property owners within the district, and the assessment of such amount may be made and such warrants may be issued as in other cases provided for in chapters 40–23 and 40–24.

"40–22–08. *Improvement districts to be created.—*For the purpose of making an improvement project of one of the types specified in section 40–22–01 and defraying the cost thereof by special assessments, a municipality may create wa-

ter districts, sewer districts, water and sewer districts, street improvement districts, boulevard improvement districts, flood protection districts, and parking districts, and may extend any such district when necessary. The appropriate special improvement district may be created by ordinance or resolution. The district shall be designated by a name appropriate to the type of improvement for the making of which it is created, and by a number distinguishing it from other improvement districts. Nothing herein, however, shall prevent a municipality from making and financing any improvement and levying special assessments therefor under any alternate procedure set forth in this title.

"40–22–09. *Size and form of improvement districts—Regulations governing.*— Any improvement district created by a municipality may embrace two or more separate property areas. Each improvement district shall be of such size and form as to include all properties which in the judgment of the governing body, after consultation with the engineer planning the improvement, will be benefited by the construction of the improvement project which is proposed to be made in or for such district, or by any portion or portions of such project. A single district may be created for an improvement of the type specified in any one of the subsections of section 40–22–01, notwithstanding any lack of uniformity among the types, items, or quantities of work and materials to be used at particular locations throughout the district. The jurisdiction of a municipality to make, finance, and assess the cost of any improvement project shall not be impaired by any lack of commonness, unity, or singleness of the location, purpose or character of the improvement, or by the fact that any one or more of the properties included in the district is subsequently determined not to be benefited by the improvement, or by a particular portion thereof, and is not assessed therefor.

There may be omitted from a water or sewer district, in the discretion of the governing body, properties within the corporate limits which are benefited by the improvement therein but do not abut upon a water or sewer main, without prejudice to the right and power of the municipality subsequently to assess such properties to the extent and in the manner permitted by law. The governing body may by resolution enlarge an improvement district in which an improvement is proposed or under construction upon receipt of a petition therefor signed by the owners of three-fourths of the area to be added to the district."

The plaintiffs-appellants' arguments with reference to the unconstitutionality of the challenged statutes resolve themselves into a claim that due process and equal protection of the law were denied to those property owners assessed in the instant case. This claimed denial of due process and equal protection of the law is premised upon the fact that property in the urban renewal area was not included in the special assessment district even though such property was adjacent to the proposed overpass, and that the overpass would be of general benefit to the city, since everyone could use it and, therefore, the assessment should be spread over all the property in the city. There is thus presented a divergence of opinion as to what property is benefited and should be assessed. In such a situation we agree with the Minnesota Supreme Court where it said, in Village of Edina v. Joseph, 264 Minn. 84, 119 N.W.2d 809 (1962), in paragraph 6 of the syllabus, that:

"Where reasonable men differ the determination of the assessing tribunal or body will be upheld."

We said, in Fisher v. City of Minot, 188 N.W.2d 745 (N.D.1971), in paragraph 4 of the syllabus, that

" . . . all doubt as to the constitutionality of a statute including doubts arising from the constitution as well as

from the statute should be resolved in favor of the validity of the statute and the statute will be upheld unless it clearly appears that it violates some provision of the constitution."

The plaintiffs-appellants in the case at bar have not made it clearly appear to us that the challenged statutes violate either the State or the Federal Constitution. In addition, all three of the challenged statutes, namely, §§ 40–22–06, 40–22–08, and 40–22–09, N.D.C.C., have been upheld by prior decisions of this court.

In *Parker Hotel, supra,* in paragraph 5 of the syllabus, we held that:

"A city is empowered to lay out, establish, open, grade, pave, or otherwise improve and regulate the use of its streets. In doing so, it may extend any street over any railroad track within the corporate limits. It may pay the cost of street improvement by the special assessment method and, in doing so, may enter into an agreement with the State to share the cost."

In addition, in *Parker Hotel, supra,* 177 N.W.2d at 773, we said:

"When the city council is clothed with a *valid enactment* with the power to decide a question of fact, the exercise of its judgment and discretion in doing so cannot be controlled by the court in a certiorari proceeding." [Emphasis supplied.]

Section 40–22–06, N.D.C.C., was one of the statutes considered in the *Parker Hotel* case and we believe that our decision in *Parker Hotel* leaves no doubt as to § 40–22–06, N.D.C.C., being constitutionally valid.

■ In Fisher v. City of Minot, *supra,* §§ 40–22–08 and 40–22–09, N.D.C.C., among others, were challenged as unconstitutional as denying due process under the State and Federal Constitutions. In *Fisher* we found the notice by publication provision (§ 40–22–15, N.D.C.C.) and the pro-

test provision (§ 40–22–18, N.D.C.C.) to be valid, and we held, in paragraph 5 of the syllabus:

"In this jurisdiction an opportunity to be heard with right of review upon the question of assessments for benefits is all that is required to satisfy the due process provisions of the Constitutions of the United States and North Dakota."

■ In the area of equal protection of the laws, the reasonableness of the classifications for taxing purposes becomes important. In Souris River Telephone Mutual Aid Corporation v. State, 162 N.W.2d 685, 689 (N.D.1968), we stated the rule on taxing classifications to be:

" . . . any classification must be reasonable and the subjects can be segregated into classes only by differences in the subjects which afford a ground for different treatment with reference to taxation. A basis for classification must be such as naturally inheres in the subject matter. 51 Am.Jur., Taxation §§ 175, 177, pp. 234–238. State v. Gamble Skogmo, Inc., 144 N.W.2d 749 (N.D. 1966)."

■ In State v. Gamble Skogmo, Inc,. *supra,* we held, in paragraph 5 of the syllabus:

"Only invidious discrimination is prohibited by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution."

The taxing classifications established by the special assessment commission in the instant case—that is, the property within the special assessment district as distinguished from the property outside the said district—are not unreasonable nor invidiously discriminatory. The requirement in *Souris River Telephone, supra,* that there be differences in the subjects to justify differences in taxation is met in the instant case by the fact that the property in the special assessment district was determined to be specially benefited by the con-

struction of the overpass. Therefore the specially assessed property is differentiated from the property not assessed and the special assessment tax is not a denial of equal protection of the laws to those property owners assessed.

The plaintiffs-appellants also claimed that the assessment in this case violated § 176 of the North Dakota Constitution, which provides in pertinent part:

"Taxes shall be uniform upon the same class of property including franchises within the territorial limits of the authority levying the tax. . . ."

■ In Rolph v. City of Fargo, 7 N.D. 640, 76 N.W. 242 (1898), this court held, in paragraph 3 of the syllabus, that:

"Section 176 of the state constitution does not relate to local assessments, but only to general taxation."

This rule has more recently been upheld in Becker County Sand & Gravel Co. v. Wosick, 62 N.D. 740, 245 N.W. 454 (1932), at page 461; and in Gallaher v. City of Fargo, 64 N.W.2d 444 (N.D.1954), at page 449.

Finally, in *Fisher, supra,* we said at 188 N.W.2d at pages 752–753 of that decision:

"Thus, in accordance with our decision in Murphy v. City of Bismarck, *supra* [109 N.W.2d 635 (N.D.1961)], we hold in the instant case that Chapter 40–22 is constitutional."

From our decision in *Fisher* and from the holdings in the cases previously cited, we are convinced that the challenged sections, namely, §§ 40–22–08 and 40–22–09, as well as § 40–22–06, N.D.C.C., are constitutionally valid.

The next issue deals with the legality of not including the Grand Forks Urban Renewal Area in the special assessment district. The plaintiffs-appellants claim that it was illegal not to include the urban renewal area within the special assessment district since it is adjacent to the overpass.

In Murphy v. City of Bismarck, *supra,* 109 N.W.2d at 643–644, this court stated:

"Section 40–22–09 has expressly conferred upon the governing body of every city the legislative power and discretion to determine the size, form, and boundaries of an improvement district, and the judiciary will not interfere with the governing board's legislative determination of the size, form, and boundaries of an improvement district in the absence of jurisdictional defects, fraud, or arbitrary action. The courts will not concern themselves with the wisdom of a municipal ordinance or resolution."

While we are cognizant that § 40–22–09, N.D.C.C., was amended in 1971 by the Legislature, such amendment does not affect the issues involved in the case at bar. We therefore adopt the reasoning set forth in Murphy v. City of Bismarck, *supra.*

■ In City of Southwest Fargo Urban Renewal Agency v. Lenthe, 149 N.W.2d 373 (N.D.1967), this court held, in paragraph 3 of the syllabus:

"Urban renewal property is not exempt from the payment of special assessments."

In the *Southwest Fargo* case, the urban renewal property was in the special assessment district at the time it was condemned by the urban renewal agency. The court in that case held only that urban renewal property could not claim an exemption from payment of special assessments, not that urban renewal property must be included in a special assessment district due to its location.

After perusing Murphy v. City of Bismarck, *supra,* and City of Southwest Fargo Urban Renewal Agency v. Lenthe, *supra,* it is quite evident there was nothing illegal about not including the urban renewal area in the special assessment district in question in this case. Relying on the

*Murphy* case, *supra,* this court will not concern itself with the wisdom of a municipal ordinance or resolution.

The next issue asserted by the plaintiffs-appellants is whether the special assessment commission of the City of Grand Forks, which commission's action was confirmed by the city council of Grand Forks, acted arbitrarily in determining the size and form of the special assessment district and in determining the assessments.

Section 40–22–09, N.D.C.C., provides in pertinent part:

" . . . Each improvement district shall be of such size and form as to include all properties which *in the judgment of the governing body,* after consultation with the engineer planning the improvement, will be benefited by the construction of the improvement project . . . . " [Emphasis supplied.]

In Soo Line Railroad Co. v. City of Wilton, 172 N.W.2d 74 (N.D.1969), this court held, in paragraph 5 of the syllabus:

"For reasons stated in the opinion, the assessment of benefits made by the special assessment commission and confirmed by the city commission for street, curb, and gutter improvements which involve judgment and discretion will not be reviewed by the court, and it is not the province of the court to substitute its judgment for that of the commission making such decision, but merely to determine whether the commission was within its jurisdiction, was not mistaken as to the applicable law, and did not act arbitrarily, oppressively, or unreasonably, and to determine whether there is substantial evidence to support or justify the determination."

■ Although the *Soo Line* case involved street, curb, and gutter improvements, we believe our ruling in *Soo Line* on the scope of this court's review has application in this case. We therefore hold that the Grand Forks City Council had ju-

risdiction to create the special improvement district in question, that it applied the appropriate law, and that it did not act arbitrarily.

The plaintiffs-appellants urge that, because anyone could use the overpass involved in the instant case, it would be a general rather than a special benefit and that it should be paid for by an assessment of all of the taxpayers in Grand Forks. After reviewing the record, we believe that the judgment of the district court in favor of the City should be upheld because the fact that anyone could use the overpass does not detract from the fact that such overpass would specially benefit the property owners assessed by the special assessment commission in this case.

The next issue is whether the benefits determined by the city council were based on speculation or conjecture.

Our review of this issue is governed by the holding previously quoted from paragraph 5 of the syllabus in the *Soo Line* case, *supra.*

■ In Village of Edina v. Joseph, 264 Minn. 84, 119 N.W.2d 809 (1962), the Minnesota Supreme Court held, in paragraphs 6 and 7 of the syllabus:

"6. Where reasonable men differ the determination of the assessing tribunal or body will be upheld.

"7. An assessment for a special local improvement, otherwise legal, is not void because the lot involved is not benefited by the improvement, owing to its present particular use. The benefit is presumed to inure not to the present use, but to the property itself."

We adopt this reasoning.

■ In the case at bar, the Grand Forks City Council determined the property that would be benefited by the construction of the overpass. The fact that property adjacent to the overpass was not included in the assessment district does not

void the assessment, nor does the fact that anyone could use the overpass. The determinations made by the Grand Forks City Council were matters of judgment and discretion, and this court will not substitute its judgment for that of the city council.

 In Reed v. City of Langdon, 78 N.D. 991, 54 N.W.2d 148 (1952), this court held, in paragraph 4 of the syllabus:

"Generally, all presumptions are in favor of the validity of assessments for local improvements and the burden is on persons attacking the validity of assessments to show that they are invalid."

The plaintiffs-appellants have not sustained their burden of proof in this case and we therefore hold the assessments by the special assessment commission to be valid.

Finally, the plaintiffs-appellants have urged this court that there be a review of the method and formula used by the special assessment commission of the City of Grand Forks. The plaintiffs-appellants did not specially request a review under Chapter 40–26, N.D.C.C., but elected to request such review in one of their prayers for relief in this action. Chapter 40–26, N.D.C.C., provides that in the event that such review is requested such review must be made within six months from the date of the confirmation of the assessment by a city council. The record reveals that no such request was demanded by the plaintiffs-appellants within the prescribed time. See Ellison v. City of LaMoure, 30 N.D. 43, 151 N.W. 988 (1915). Because of our decision in this case, we do not believe that a review of the method and formula used by the special assessment commission of the City of Grand Forks is merited.

In light of our holding in this case and the holding in *Parker Hotel, supra,* we agree with the district court that there was no genuine issue as to any material fact.

The summary judgment in favor of the defendant, City of Grand Forks, is, accordingly, affirmed.

ERICKSTAD, C. J., and TEIGEN, VOGEL and KNUDSON, JJ., concur.