STATE of North Dakota, Plaintiff
and Appellant,

v.

Henry H. HOWE, Defendant
and Appellee.

Cr. No. 555.

Supreme Court of North Dakota.

Nov. 26, 1976.

Dale V. Sandstrom, Asst. Atty. Gen., Bismarck, for plaintiff and appellant.

Lundberg, Nodland & Schulz, Bismarck, for defendant and appellee; argued by Irvin B. Nodland, Bismarck.

SAND, Justice.

This is an appeal by the State from an order issued by the Barnes County district court dismissing the criminal information in which the defendant, Henry Howe, was charged with tampering with a witness in violation of § 12.1–09–01, North Dakota Century Code.

The charge was based upon a telephone call by the defendant to Mrs. Linda Rohde on the afternoon of July 9, 1975. Mrs. Rohde had previously signed a criminal complaint against Diane Stringer for contributing to the delinquency of a minor, that minor being Mrs. Rohde's son. The statement made by the defendant over the telephone, which is not disputed by the parties, was as follows:

> "Mrs. Rohde, this is Henry Howe. Did you sign a complaint on Diane Stringer? Well, I'm not making a threat, I'm making a statement—if you want to play these silly little legal games, I'll sue for your back teeth. You know I'm a good lawyer—I'll sue you for everything you've got and charge you with neglect."

Defendant Howe was arrested, and after a preliminary hearing before Judge Kirk Smith was bound over to district court. The defendant, before trial, moved for a dismissal on grounds that the criminal information failed to state an offense and that no evidence was or could be introduced to show that the telephone call was anything other than a lawful act. The criminal information was based on the complaint signed by Linda Rohde and charged that:

> "Defendant, did unlawfully make a telephone call to Linda L. Rohde at her home, and during the said telephone call by the defendant to Linda L. Rohde, the said defendant did threaten the said Linda L. Rohde with the intent to influence her testimony in an official proceeding, to-wit, the criminal case of *State of North Dakota vs. Diane Stringer;* that the said threatening language consisted of a statement by the defendant to Linda L. Rohde, substantially as follows: 'Mrs. Rohde, this is Henry Howe. Did you sign a complaint on Diane Stringer? Well, I'm not making a threat, I'm making a statement—if you want to play these silly little legal games, I'll sue for your back teeth. You know I'm a good lawyer—I'll sue you for everything you've got and charge you with neglect.'; That the said conversation was threatening to Linda L. Rohde and caused her to be afraid and physically upset; this contrary to the statute in such cases made and provided and against the peace and dignity of the State of North Dakota; as defined in Section 12.1–09–01 of the North Dakota Century Code."

The Barnes County district court, Judge Hamilton Englert presiding, issued an order granting the defendant's motion to dismiss. In granting the motion, the court stated that even if all allegations in the information were proven no intent to tamper with another's testimony could be shown. The court also stated, in a memorandum handed to both counsel before oral arguments on the motion, that no evidence could be submitted that would go beyond the allegations in the information, and that it was speculative at the time of the telephone call whether Mrs. Rohde would be a witness in the action against Diane Stringer.

The court also indicated, in supplemental findings to its order for dismissal, that it had "full knowledge of the facts involved and which would most likely come out at the trial of this case." Prior to the phone call in question a juvenile hearing had been held involving Mrs. Rohde's son in which Mrs. Rohde had testified against her son. Defendant Howe had acted as attorney for

Mrs. Rohde's son in that hearing, with Judge Englert presiding.

The Judge stated in his supplemental findings supporting the order of dismissal that

". . . this Court had sufficient knowledge of the facts that would be shown in the trial of the case to make a proper determination of what the rulings of the court would be as to this charge within Section 12.1–09–01 when the court would be asked on completion of the state's case to rule on the motion to dismiss."

and, further, that

"I feel I acted in ruling on the motion to dismiss in the same manner that I would have done after hearing the state's evidence, even though the defendant's side of the case may have brought out more with respect to the juvenile court action."

The State appealed from the order for dismissal, contending that it was error for the district court to base its ruling on facts not in evidence but within the personal knowledge of the court; that Mrs. Rohde was a "witness" within § 12.1–09–01 NDCC; that defendant's act was unlawful and in violation of § 12.1–09–01, NDCC; and that it was improper to dismiss the charge for insufficient evidence of intent since intent is a question of fact for the jury.

The defendant contends that there is no right of appeal in this case by the State from the order for dismissal, and further that the facts stated in the criminal information could not constitute an offense.

■ We turn first to the question whether or not the order dismissing the criminal charge is an appealable order. Section 29–28–07, NDCC, as is material here, provides:

"An appeal may be taken by the state from:

"1. An order quashing an information or indictment or any count thereof;"

The note to this section states that motions to quash were abolished in Rule 12, North Dakota Rules of Criminal Procedure. Defendant Howe argues vigorously that subsection 1 is the only subsection under which the State could conceivably claim the right to appeal, and that Rule 12(a) expressly abolished that subsection when it did away with motions to quash. We conclude that the argument is premised on an erroneous assumption and hold that the State had a right to appeal from the trial court's order for the reasons set out later herein.

■ The right to appeal is purely statutory, and an order is appealable only if it comes within the provisions of a specific statute. *State ex rel. Olson v. Nelson,* 222 N.W.2d 383 (N.D.1974); *Huso v. Bismarck Public School Board,* 219 N.W.2d 100 (N.D. 1974); *State v. McEnroe,* 69 N.D. 445, 287 N.W. 817 (1939). The right to appeal is a substantial right, however, and statutes conferring the right of appeal must be liberally construed to maintain that right. If such a statute is susceptible of different meanings, it will be construed in favor of the right of appeal. *In re Adoption of Godejohn,* 190 N.W.2d 42 (N.D.1971); *In re Heart River Irrigation District,* 77 N.D. 827, 47 N.W.2d 126 (1951).

■ The right of appeal being statutory also means that this right may be given or taken away only by statute. The right of appeal cannot be taken away by rule.[1] If Rule 12, NDRCrimP, were to attempt to take away this right of appeal, then Rule 12 would be invalid. We have on prior occasions in substance said, with reference to statutes, that a construction which will render a statute of doubtful constitutionality will be avoided when reasonably possible. See *Chernick v. City of Grand Forks,* 210 N.W.2d 73 (N.D.1973); *Zimmerman v. Minot State College,* 198 N.W.2d 108 (N.D. 1972); and *Lindberg v. Benson,* 70 N.W.2d 42 (N.D.1955).

■ We think the rule of law as it applies to statutes equally well applies to rules adopted by the court. Therefore, if Rule 12 is susceptible to two constructions, one of

---

1. Section 27–02–10, NDCC, provides: "No rule promulgated under sections 27–02–07 and 27– 02–08 shall abridge, enlarge, or modify in any manner the substantive rights of any litigant."

which would question its validity and one which would not, we must adopt the latter.

Our decision in *State v. Allesi,* 211 N.W.2d 733 (N.D.1973), sheds light on the interpretation to be given § 29–28–07, NDCC, under which the State is claiming its right to appeal. In *Allesi,* the trial court dismissed the action at the close of the State's case on grounds that evidence was insufficient to convict the accused. The State appealed, whereupon the defendant argued that the case did not come within § 29–28–07, and hence was not appealable. We held that the case was appealable under subsection (1) of that statute because, in dismissing the case, the court in effect quashed the information.

This court later referred again to the *Allesi* holding in *State v. Iverson,* 219 N.W.2d 191, 194 (N.D.1974), which involved an appeal from an order to suppress evidence. The case was distinguished from *Allesi* on that fact and appeal was denied, but we stated that

"An order which on its face, without more, has the effect of quashing an information, is appealable. An order suppressing evidence is not."

In *Allesi,* we said, the effect of the order was to dismiss the entire case. We may add that it is not the label which controls, but rather the effect.

In the case at bar, defendant Howe was proceeded against by information. The trial court's action in dismissing the case comes plainly within the "effectively quashing" principle of *Allesi.* "Quash" is defined as "to overthrow; to abate; to vacate; to annul; to make void." Black's Law Dictionary 1410 (4th ed. 1968). It is not limited to the specific procedural device of a motion to quash. Our decision in *Allesi* reflects more concern with the effect of an order than its designation or label. Rule 12, NDRCrimP, on the other hand, was apparently directed at motion procedure, and was intended to simplify the form in which various pleas and motions were to be made. The commentary to Rule 12 illustrates this by stating that even if a wrong plea is selected, it will henceforth be considered a motion to dismiss.

We do not think Rule 12, NDRCrimP, was intended to deny the substantive right to appeal granted under subsection (1) of the statute, and if so intended, it could not have that effect. A procedural rule cannot abrogate a substantive right. Rather, the rule abolished a creature known as the motion to quash, substituting therefor a motion to dismiss which has precisely the same effect. The order of dismissal here "quashed" the information, and brings the appeal within subsection (1) of § 29–28–07, NDCC.

The more critical question is whether dismissal of the charge in the trial court was in error. We believe it was, and therefore reverse the trial court's order.

As a preliminary matter, we point out that the purpose of a motion to dismiss is to test the sufficiency of the information or indictment. It is not a device for summary trial of the evidence, and facts not appearing on the face of the information cannot be considered. *United States v. Luros,* 243 F.Supp. 160 (N.D.Iowa 1965); *United States v. Chin Doong Art,* 180 F.Supp. 446 (D.C.N.Y.1960). The court is obliged to confine itself to the face of the information. See *United States v. Quinn,* 116 F.Supp. 802 (D.C.N.Y.1953). Further, for purposes of the motion, all well-pleaded facts are taken to be true. *United States v. Luros, supra.*

The trial court held that the information, which has been set out in full above, was not sufficient to charge the defendant Howe with a crime under § 12.1–09–01, NDCC. The defendant was charged under § 12.1–09–01(1), NDCC. Subsection (1) provides:

"1. A person is guilty of a Class C felony if he uses force, threat, deception, or bribery:

"a. With intent to influence another's testimony in an official proceeding; or

"b. With intent to induce or otherwise cause another:

"(1) To withhold any testimony, information, document, or thing from an official proceeding, whether or not the other person would be legally privileged to do so;

"(2) To violate section 12.1–09–03;

"(3) To elude legal process summoning him to testify in an official proceeding; or

"(4) To absent himself from an official proceeding to which he has been summoned."

█ In order for the information to validly charge a crime under this subsection, *an official proceeding* must be pending which will be involved. The federal statute on obstruction of justice serves as an aid in the construction of that term. The Federal Criminal Code was used as a pattern for North Dakota's criminal code, and although not identical, 18 U.S.C. § 1503, entitled "Influencing or injuring officer, juror or witness generally" is similar in purpose and effect to § 12.1–09–01(1), NDCC. See North Dakota Senate Judiciary Committee Minutes, January 10, 1973. Construction of 18 U.S.C. § 1503 has included not only court proceedings, but preliminary hearings and grand jury investigations. A proceeding begins at the earliest with the filing of a complaint with the magistrate and ends, at the latest, with final disposition of the last appeal. 20 A.L.R.Fed. 731. It was stated in *Wilson v. United States,* 77 F.2d 236 (8th Cir. 1935), that under the federal statute, after a preliminary hearing has been held and an accused bound over for his appearance before the court having jurisdiction to try his offense, there is a proceeding pending in and before that court. See also *Rice v. United States,* 356 F.2d 709 (8th Cir. 1966); *United States v. Scoratow,* 137 F.Supp. 620 (W.D.Pa.1956).

█ A complaint was filed by Linda Rohde against Diane Stringer on January 9, 1976. Later that same day defendant Howe made the telephone call complained of in this action. We are satisfied that the signing of the complaint against Diane Stringer commenced an official proceeding within § 12.1–09–01, NDCC, and was pending.

█ The substance of the charge itself is using threat with intent to influence another's testimony or cause another to withhold testimony in an official proceeding. The gist of the offense is the willfull and corrupt attempt to interfere with and obstruct the administration of justice. 67 C.J.S. *Obstructing Justice* § 8. The mere attempt is what the law makes punishable. The attempt need not be successful, and in fact need not even be the method that would be the most promising; success only aggravates the offense. *Knight v. United States,* 310 F.2d 305 (5th Cir. 1962); *People v. Coleman,* 350 Mich. 268, 86 N.W.2d 281 (1957). The offense is not limited to successful attempts because the damage has been done as soon as the endeavor is made. If it is successful, the function of the court has been defeated by private aggression. If not successful, the orderly processes of society have been challenged and an effort made to substitute fear of violence or disgrace for the fairness of due process. *People v. Coleman, supra,* at 288.

█ Further, it is not necessary that the person tampered with be under subpoena as a witness. All that is necessary is that the person be one who knows or is supposed to know material facts and is expected to testify to them or to be called on to testify. See *United States v. Griffin,* 463 F.2d 177 (10th Cir. 1972); *United States v. Solow,* 138 F.Supp. 812 (D.C.N.Y.1956). The defendant need not have absolute knowledge that the person is expected to testify; information or a reasonably founded belief will suffice. This knowledge or belief can be inferred from the circumstances and is a question for the jury. *Odom v. United States,* 116 F.2d 996 (5th Cir. 1941).

█ The trial court in this case based its dismissal in part on the fact that it would be "speculative" whether Mrs. Rohde would be a witness in the action against Diane Stringer. It was not necessary that Mrs. Rohde be under subpoena to testify; further, the trial court was limited to the face of the complaint in which all allegations

were assumed to be provable or true. In light of the fact that Mrs. Rohde was the complaining witness against Diane Stringer, we believe an assumption arises that she is one who knows or is supposed to know material facts and is expected to testify to them. Mrs. Rohde comes within the scope of prospective witnesses under the statute just about as squarely as any person could. The statute is not confined to those who are legally bound to testify, inasmuch as the offense of obstructing justice is one "against the very object and purposes for which courts are established." 58 Am. Jur.2d *Obstructing Justice* § 8.

 It was strongly urged by the defendant that his words did not constitute a threat because he simply made an unconditional statement informing Mrs. Rohde that legal action would be instituted against her, and that he prefaced his comments to Mrs. Rohde with the statement that he was not making a threat. This view misinterprets the nature of a legal threat and the purpose of the statute. No precise words are necessary to convey a threat. It may be bluntly spoken, or done by innuendo or suggestion. *In re Burke,* 9 O.C.D. 350, 17 Cr.Ct.R., N.S., 315 (1899). A threat often takes its meaning from the circumstances in which it is spoken and words that are innocuous in themselves may take on a sinister meaning in the context in which they are recited. *Herbert Burman, Inc. v. Local 3 International Brotherhood of Electrical Workers,* 214 F.Supp. 353 (S.D.N. Y.1963). The court in that case stated that a threat is an expression of an intention to inflict evil or injury on another. See also Black's Law Dictionary 1651 (4th ed. 1968), for a similar definition. In *State v. Moyer,* 87 W.Va. 137, 104 S.E. 407 (1920), the word "threat" was said to be very broad and indefinite, including almost any kind of expression of intention of one person to do an act against another, and ordinarily signifying an intention to do harm. In *State v. Weippert,* 237 N.W.2d 1 (N.D.1975), involving the offense of making an annoying telephone call, we referred to cases from the State of Maine, and stated as follows:

"The court provided the following criteria in defining the word 'threat' as here used stating that (a) the words used must impart 'menace of destruction or of injury'; (b) the threat may be made by innuendo or suggestion; (c) in determining [if] the words used constitute a true 'threat', the circumstances under which the threat is uttered and relations between the party may be taken into consideration; and (d) the threat must be such as would ordinarily cause alarm. The court in *State v. Lizotte,* 256 A.2d 439, 442 (Me.1969), approved an additional refinement stating that it is the reasonable and natural effect upon and understanding of the ordinary hearer which is controlling and that 'the gist of this whole offense is the possibility of inducing fear in the mind of another to his disquiet'. Finally, the court in *State v. Hotham,* 307 A.2d 185 (Me.1973) reiterated the foregoing requirements and stressed that a 'threat' must involve more than a message of 'menace of destruction or injury'; it is also an indispensable feature of a 'threat' that its 'promise of evil' must be in a context of circumstances by which it gives rise to a reasonable likelihood that 'alarm' or 'fear . . . to his disquiet' will be induced in some person."

This court continued by saying:

". . . the trial judge could have concluded that the language used and the other circumstances present imparted both an intention and an ability that 'would *justify* apprehension on the part of the recipient of the threat.' . . . Whether [addressee] himself was in fact apprehensive is a question different from whether the circumstances justified his (or any ordinary recipient's) being apprehensive."

 In the instant case, the words themselves, i.e., "I'll sue you for everything you've got and charge you with neglect" were fairly explicit. They could be interpreted to threaten both civil suit and a criminal charge. To threaten a person with a criminal charge is itself a crime under § 12.1–17–06, NDCC. The defendant con-

tends that although neglect is a crime under § 14–09–22, NDCC, it can also be the basis for civil liability under § 14–09–13, NDCC, and that his statement was only in reference to a civil suit. We find that his use of the language "*charge* you with neglect" allows an inference that he was threatening to charge a crime. This would be a question for the trier of facts. As discussed further below, even if the statement was in reference to civil suit only, it could constitute a threat under the statute. Further, to determine whether a threat was made, the phone call must be examined in the context in which it was made. Howe was admittedly angry at the time the call was made. Mrs. Rohde had testified against her son, Howe's client, earlier that day in the juvenile hearing. These circumstances would justify apprehension on the part of a reasonable person receiving such a call. As counsel for both parties correctly pointed out, it matters not whether Mrs. Rohde was actually apprehensive or felt threatened; rather, the issue is whether the circumstances would justify apprehension on the part of the recipient. We hold that the circumstances would justify that conclusion here. In addition, the complaint alleges that Howe made the statement with intent to threaten Mrs. Rohde, and because the allegations of the complaint must be taken as true for purposes of a motion to dismiss, the "threat" element of the charge was satisfied.

 Howe asserted strenuously that it was not illegal to threaten what he had a right to do, and cited a number of cases to support that contention. We find that those cases are inapplicable. Threatening civil suit in itself may be a lawful act, but that analysis falls short of the substance of the charge of obstructing justice. The statute does not make it a crime simply to threaten someone; it makes criminal the act of threatening someone *for the purpose of obstructing justice.* It is interference with the legal system that the statute seeks to prevent. Thus, to go far enough, the analysis must look at both the act itself and its purpose. An act which is lawful in itself may be done for an illegal goal or purpose,

in which case the act itself becomes criminal. As was stated in *State v. Bringgold,* 40 Wash. 12, 82 P. 132 (1905), it matters little what form the endeavor takes if it was done with the intent to obstruct the course of justice. The cases relied upon by the defendant are not in point because they involve situations where both the goal *and* the means used to achieve it were lawful. The goal alleged in this charge, which is to influence or prevent a witness from testifying, is clearly unlawful.

 The trial court, in granting the motion, stated that no intent to tamper with a witness' testimony could be shown. This was not a proper basis on which to grant dismissal of a charge. Where intent of the accused is an element of the crime charged, its existence is a question of fact for the jury. The question of intent cannot be ruled upon as a matter of law. *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). It is for the jury to determine from all the evidence. *Knight v. United States,* 310 F.2d 305 (5th Cir. 1962). It was sufficient here that the complaint charged that the act was done with intent to influence Mrs. Rohde's testimony in an official proceeding. That allegation was to be taken as true for purposes of the motion to dismiss. Further determination of intent is not proper on such a motion.

The State contended that the trial court improperly considered evidence outside the record in ruling on the motion. The trial judge stated that because he had presided at a juvenile hearing involving Mrs. Rohde, Mrs. Rohde's son and Diane Stringer, he had or knew all the evidence which could be presented in the case. Without more, it appears that the State has a basis for its contention. Facts appearing to be outside of the criminal information are not to be considered on a motion to dismiss. This was discussed earlier herein and need not be repeated.

We conclude that the information on its face was sufficient to charge the crime of tampering with a witness under § 12.1–09–01, NDCC, and for the reasons stated previ-

658 **656**

ously we conclude that the dismissal of the charge was in error. We therefore reverse the dismissal and reinstate the criminal information.

ERICKSTAD, C. J., and PEDERSON and VOGEL, JJ., concur.

WILLIAM L. PAULSON, J., deeming himself disqualified, did not participate; JAMES H. O'KEEFE, District Judge of the Second Judicial District, sitting in his place.

JAMES H. O'KEEFE, District Judge (dissenting).

An order by a district court in a criminal case not enumerated in 29–28–07 NDCC is not appealable by the State. *State v. Fortune,* 29 N.D. 289, 150 N.W. 926 (1915). The statute has exclusive grounds for appeal. *Allesi* certainly does what the majority says it does—equates a motion to quash with a motion to dismiss. In criminal cases affecting the most substantial interest of all, *i.e.,*—guilt or innocence, I would think it wrong to make such an equation and would reverse *Allesi.* See *State v. Bauer,* 153 N.W.2d 895, 897, and other cases cited therein. I can best state what Judge Teigen said in dissenting to *Allesi*:

"Under the majority holding the State's rights of appeal in criminal cases have been broadened far beyond the limited rights provided by statute. The holding, in my opinion, amounts to judicial legislation."

The majority says not the label, but rather the effect, controls. But that does violence to the clear enough wording of 29–28–07 NDCC which labels, if you please, precisely what is appealable. The decision today is judicial legislation.

A dismissal by a district judge based on presumed knowledge of the law, and in this case, some knowledge of the facts, should not be appealable unless the legislature says so in express terms. I would affirm the dismissal on the foregoing basis and therefore not reach the second question concerning the correctness of the trial judge in dismissing. I am satisfied however that the alleged conduct of Henry Howe rose to the legal dimensions necessary to constitute a "threat" and thus it became a properly chargeable offense in the information.