*619 OPINION OF THE COURT
Howard E. Goldfluss, J.
The defendant herein seeks to dismiss the fifth count of the indictment which charges the defendant with the crime of tampering with a witness in the third degree (Penal Law § 215.11). He claims that the count is defective because there was no criminal proceeding in effect at the time of the alleged threat and, therefore, the statutory prohibition does not apply to him.
The statute under which the defendant was indicted at the time of the occurrence reads as follows:
"A person is guilty of tampering with a witness in the third degree when, knowing that a person is about to be called as a witness in a criminal proceeding:
"1. He wrongfully compels or attempts to compel such person to absent himself from, or otherwise to avoid or seek to avoid appearing or testifying at such proceeding by means of instilling in him a fear that the actor will cause physical injury to such person or another person”.
The complainant, Benjamin Thomason, testified in the Grand Jury to the following: on October 28, 1985, in the vicinity of Soundview and Lafayette Avenues in The Bronx, he had just cashed a check for approximately $314 at a check-cashing store. He was then approached from behind, and felt a gun to his neck. The perpetrator grabbed him around the shoulders and ordered him twice to "Give it up”. Toward the end of the encounter, he was facing the defendant. After Thomason gave him the currency, the defendant stepped back, put the gun in his belt, and turned and ran.
Thomason testified further that a friend of his, Jason Barber, was in the vicinity when the incident occurred.
Barber was called and testified that he was standing across the street and saw the defendant approach Thomason from behind. He says he walked over to them and then he saw the defendant run away. He had seen him before — knowing his first name to be Keith.
Barber then testified as follows:
"Q — Following this incident on October 28, 1985, on October 30, 1985, did there come a time when you saw him again?
"A — Yes
"Q — What were those circumstances?
"A — He came up — he approached me with my boss. I was *620 working. He pulled out a gun, and he said, I got to put a bullet in you 'cause you told where I live and that was it.
"Q — What happened when he did that?
"A — I ran.
"Q — When he said that, did he have anything in his hands?
"A — The gun.
"Q — And what was he doing, please explain.
"A — He was pointing toward me like if he was to shoot me, but he didn’t, and I ran.”
The People concede that the defendant had not yet been apprehended at the time of the alleged intimidation.
This court has found no specific New York case reference on the stated issue, but it has been addressed in other jurisdictions. The import of those cases suggest that such statutes, similar to New York’s Penal Law § 215.11 have as their goal the prevention of corrupt interference with the administration of justice. It is not the imminence of the witness’ testimony, but the intent of and the purpose and design of the accused that brings him within the purview of the statute. (See, State v Murray, 349 So 2d 707 [Fla Dist Ct App 1977]; State v Dauzat, 284 So 2d 592 [La 1973]; People v McAllister, 99 Cal App 37, 277 P 1082; State v Howe, 247 NW2d 647 [ND 1976].)
It is obvious that the testimony of Barber indicates awareness by the defendant that he, Barber, was a potential witness to the robbery. If that were not so, there would have been no logical motivation by the defendant to address Barber in that fashion.
The purpose of any statute of this nature is to guard against improper interference with witnesses in criminal prosecution. Any intent to threaten or otherwise intimidate a witness which could result in preventing him from testifying at some future time, must be inclusive of the prohibition of this statute. All that is required is that the accused believes that a proceeding was about to be instituted or that one was likely to be instituted.
To interpret the intent of the statute any other way would make society impotent in guarding against the disastrous and calamitous effect of a criminal case being decided in the streets instead of the courts. That could very well happen in many instances if the application of the statute was restricted to those persons already served with a subpoena or under other legal process to appear in a pending action. Such a *621 restriction would place a premium on early threats to prospective witnesses, accepting the defendant’s theory that any threats before formal arrests are not prohibited.
Such a supposition was best described by Charles Dickens in the epic Oliver Twist, where Mr. Bumble says: "If the law supposes that — the law is a ass — a idiot.”
Motion to dismiss the fifth count charging the defendant with the crime of tampering in the third degree is denied.